# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 01-4119

DONALD F. GREENO,

Plaintiff-Appellant,

v.

GEORGE DALEY, *et al.*,

Defendants-Appellees.

_____

Appeal from the United States District Court for
the Western District of Wisconsin.
No. 00 C 0364—**John C. Shabaz**, *Judge*.

_____

ARGUED NOVEMBER 1, 2004—DECIDED JULY 1, 2005

_____

Before CUDAHY, ROVNER, and WOOD, *Circuit Judges*.

ROVNER, *Circuit Judge*. This is the second time we have considered Wisconsin inmate[1] Donald Greeno's Eighth Amendment claim against numerous Wisconsin Department of Corrections' employees. Greeno's claim is premised on the prison employees' failure to adequately respond to his vomiting and severe heartburn, symptoms that appeared in

_____

[1] Although Greeno was incarcerated within the Wisconsin Department of Corrections at all times relevant to this appeal, a recent search of the Department's web site reveals that he has been released and is currently "out of custody."

late 1994 and became progressively worse until he was treated in 1997 for an esophageal ulcer. The district court first dismissed Greeno's complaint for failure to state a claim. *See* 28 U.S.C. § 1915A(b)(1). We reversed and remanded in part, holding that Greeno's complaint stated a claim for deliberate indifference to an objectively severe medical condition. *See Greeno v. Litscher*, No. 00-3140, 2001 WL 721026 (June 25, 2001) (unpublished order). On remand, the district court granted summary judgment to a number of defendants and again dismissed Greeno's claims against the remaining defendants. The district court also denied Greeno's motion requesting the assistance of counsel. Greeno appeals, and we again affirm in part and vacate and remand in part.

## I.

Because Greeno appeals from the grant of summary judgment, we construe the facts in the light most favorable to him. Greeno first began complaining of severe heartburn in December 1994, while incarcerated at Racine Correctional Institution. From January until July 1995, Greeno's symptoms persisted and intensified, despite his attempts to manage his illness by taking antacids and avoiding spicy foods as directed by Racine doctors. During this time Greeno's intestinal distress caused him to vomit occasionally.

In July 1995, Greeno was transferred to Fox Lake Correctional Institution, where he continued to complain about severe heartburn accompanied by vomiting. In August Greeno saw the prison doctor, Jose Lloren, and explained that his family had a history of peptic ulcer disease. Dr. Lloren prescribed Maalox to Greeno and noted in his chart the need to rule out the existence of a chronic peptic ulcer ("R/O PUD chronic?") or gastro-esophageal reflux disease ("R/O GER Dis?"). Despite these notations, no tests

were performed, and Greeno did not visit a specialist. Instead, he took the Maalox prescribed by Dr. Lloren, but it did little for his pain. Consequently, Dr. Lloren saw Greeno again in September and October. At those visits Dr. Lloren again documented the possibility that Greeno was suffering from gastro-esophageal reflux disease ("GERD?") or a peptic ulcer ("pos PUD?"), and he prescribed Tagamet in addition to Maalox.

From October 1995 through April 1996, Greeno continued throwing up and experiencing severe heartburn. He told Dr. Lloren that the Tagamet and Maalox were ineffective, but Dr. Lloren informed him that nothing more could be done for him. In April Greeno fell and injured his back, and Dr. Lloren prescribed ibuprofen and Tylenol for the pain. Greeno put in multiple health service requests for different medication because the ibuprofen and Tylenol exacerbated his esophageal condition. In response, Dr. Lloren promised to send different pain medication, but he never did. When Greeno submitted an inmate complaint and another health services request form, he was simply told to keep taking the ibuprofen. Greeno also repeatedly requested a bland diet, but was told that such diets were reserved for diabetics. He was instructed to eat bread and potatoes and learn to live with his condition.

In May and June 1996, Greeno tried several additional avenues to get a bland diet or some other form of relief for his continued heartburn and vomiting. In a letter to Sharon Zunker, director of the Bureau of Health Services, Greeno described his condition and his repeated attempts to obtain a bland diet. Zunker told Greeno that she had referred the matter to the Bureau of Health Services sector chief, but Greeno never received a response from him. After seeing that spicy food would be served the entire week of June 10, Greeno submitted yet another health services request for a bland diet, but that request too was denied.

On June 19, 1996, Greeno was transferred to Jackson Correctional Institution, where his medical problems continued. In August Greeno requested an appointment with the Jackson physician, Dr. Rizalino Yray. Dr. Yray did not see Greeno until mid-September. In the meantime Greeno appealed to Judith Nordahl, a nurse at Jackson, for more Maalox. Noting that Greeno's Maalox usage exceeded the normal dosage, nurse Nordahl denied his request. Greeno thus had nothing to combat his pain and vomiting at the beginning of September. In mid-September Greeno's vomit was bitter, yellow, and tinged with blood. He met with Dr. Yray, who performed a rectal exam to test for blood but did not change Greeno's treatment.

Greeno's suffering thus continued. In response to continuing pain in his back, nurse Nordahl gave him more ibuprofen, which she warned him to take with "CAUTION" and immediately report any bleeding. Just as before, the ibuprofen aggravated his esophageal condition. Although Greeno submitted two requests at the end of September for different pain medication, he received no response. In October, November, and December Greeno sent multiple letters to Health Services and Dr. Yray reiterating that antacid was not providing him relief and requesting additional testing or a referral to a specialist to uncover the cause of his heartburn and vomiting. Greeno told Dr. Yray that he had been diagnosed with an ulcer while at Fox Lake, but that no tests had ever been performed to verify or rule out the diagnosis.

In December Greeno wrote Sharon Bergstad, the nurse manager of the Health Services Unit, three different letters describing his ongoing pain, vomiting, and inability to receive effective treatment or additional testing. Nurse Bergstad responded by giving Greeno more Maalox.

Despite the arrival of a replacement doctor for Dr. Yray in January 1997, Greeno's situation did not improve.

Dr. Nerissa Avestruz, who replaced Dr. Yray, attempted to refer Greeno to a specialist, but George Daley, the medical director for the Department of Corrections Bureau of Health Services, denied the request. Around that same time Greeno met with nurse Bergstad, who reiterated to him that he needed to "accept and live [with] his condition." Greeno then submitted an inmate complaint (one of many) and wrote letters to nurse Bergstad, Dr. Avestruz, and Dr. Yray, threatening legal action on account of his inability to see a specialist or receive effective treatment. The defendants responded by placing Greeno on a liquid diet and holding him for observation from January 14 to 17. At the end of the three days, nurse Nordahl warned Greeno that if he did not cease filing complaints and hassling Health Services staff he would be "locked up" again, but for a longer period of time.

During the remainder of January, Greeno continued to seek different treatment. He made yet another request for a bland diet, wrote Zunker about his excessive Maalox usage, and had his cell mate and several corrections officers verify that he was throwing up on a regular basis. He also wrote to Dr. Daley and asked him why he had rejected Dr. Avestruz's attempt to refer him to a specialist.

Things began looking up in February, when Greeno was transferred to Dodge Correctional Institution, where he stayed for two weeks of medical observation. During that time Greeno was given a bland diet and Prilosec (an ulcer medication), a combination that finally resolved his heartburn and vomiting.

However, when he returned to Jackson the old pattern of neglect continued. Greeno remained on the Prilosec until it ran out at the end of February. At that time, the vomiting and burning returned. When Greeno asked for further testing and more Prilosec, he was told that the Prilosec had been a temporary measure. Instead, he was given Pepto-

Bismol. For the next two months Greeno went to great lengths to bring attention to his condition. He sent a number of letters to nurse Bergstad requesting further testing and explaining that he was vomiting blood. He attached statements to his letters from correctional officers confirming that they had seen him throwing up. Greeno wrote Dr. Avestruz requesting an endoscopy, and he also wrote Dr. Daley, inquiring why he refused to prescribe Prilosec when it had provided him with relief. Finally, Greeno wrote a letter to a doctor at Dodge Correctional Institution requesting that he tell the Jackson doctors to order him an endoscopy. Despite (or perhaps because of) these requests, Greeno's medical record contains the following entry made March 12, 1997: "per Dr. Daley's orders— *no* PT, *no* pain medication, *no* gastroscopy" (emphasis in original). During this time Greeno's symptoms continued to become more pronounced, and he vomited blood on multiple occasions.

At the end of April, Greeno saw a gastrointestinal specialist, who performed an endoscopy and diagnosed Greeno with a distal ulcer in his esophagus.[2] The doctor prescribed Prilosec for the ulcer, and Greeno's symptoms resolved. Although Greeno has since had difficulty obtaining Prilosec from prison officials on isolated occasions, he has for the most part been able to effectively treat the ulcer with Prilosec. However, the copious amounts of Maalox and Mylanta Greeno ingested from 1995 to 1997 have taken their toll. Greeno now suffers from severe and chronic constipation. In 1998 he was diagnosed with a redundant sigmoid colon and a sluggish bowel. These conditions cause Greeno a great deal of pain and prevent him from moving his bowels without the assistance of suppositories.

---

[2] The diagnosis in the record refers to "distal ulcers." Because it makes little difference at this stage whether Greeno had one or multiple ulcers, we follow the parties' lead and refer to a single ulcer.

In June 2000 Greeno filed suit in the district court under 42 U.S.C. § 1983, alleging, as relevant here, that numerous Wisconsin Department of Corrections' medical personnel had exhibited deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. Greeno also alleged deliberate indifference on the part of the employees who had processed his inmate complaints relating to his medical care. The district court screened and dismissed Greeno's complaint under 28 U.S.C. § 1915A(b)(1), which requires district courts to dismiss before service a prisoner's complaint that fails to state a claim for relief. The district court reasoned that since Greeno had received treatment for both the ulcer and the chronic constipation, he could not demonstrate that the defendants were deliberately indifferent to his serious medical needs.

We reversed in part, holding that Greeno's descriptions of severe heartburn and vomiting of blood for over two years signaled a medical need that even a lay person would recognize as serious. *Greeno*, 2001 WL 721026, at *4. Although we affirmed the dismissal of Greeno's complaint against several individuals who had no personal involvement in the alleged mistreatment, we concluded that Greeno had stated a claim for violations of the Eighth Amendment against Dr. Lloren, Dr. Yray, Dr. Avestruz, Dr. Daley, nurse Nordahl, nurse Bergstad, and Zunker (director of the Bureau of Health Services). We also held that Greeno had stated a claim against the following administrative employees who had handled his inmate complaints: former Department of Corrections' secretary Michael Sullivan, Charles Miller, William Ridgely, and Lyn Jenkins.

On remand, Greeno attempted to serve the defendants with process, but was unable to obtain addresses for Sullivan, Ridgely, Jenkins, nurse Bergstad, and Drs. Lloren, Yray, and Avestruz. After a discovery request for their addresses went unanswered, Greeno moved to compel a response. At the same time, the defendants moved for

dismissal or summary judgment, arguing that Greeno had failed to exhaust his administrative remedies or demonstrate a material issue of fact over whether the defendants had violated the Eighth Amendment. The district court rejected the defendants' exhaustion argument, but nonetheless granted summary judgment in favor of the served defendants (Nordahl, Zunker, Daley, and Miller). In the same order, the district court dismissed Greeno's complaint against the unserved defendants for failure to state a claim. Finally, the district court reaffirmed its earlier denial of a motion Greeno had filed requesting the assistance of counsel.

## II.

On appeal, we granted Greeno's renewed request for the appointment of counsel after determining that the appointment of counsel and oral argument would materially advance the issues presented on appeal.

We begin with the defendants' contention, rejected by the district court, that Greeno failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." The defendants argue that Greeno has failed to exhaust because he did not appeal every single complaint that he filed through the highest level of review, the Department of Corrections Secretary. They cite no authority, however, for the proposition that every single inmate complaint must be appealed through the final level. Greeno appealed at least seven of his inmate complaints to the Department of Corrections Secretary. In those complaints Greeno discusses his severe heartburn, his inability to receive a bland diet or effective medication, and the refusal of prison officials to refer him to a specialist for further testing. Thus, Greeno fully

exhausted his prison remedies with respect to complaints that alerted prison officials to the nature of his problem and gave them an opportunity to resolve it. *See McCoy v. Gilbert*, 270 F.3d 503, 512 (7th Cir. 2001). In short, Greeno took all steps prescribed by the prison grievance system, thus satisfying the exhaustion requirement. *See Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004).

We now turn to the district court's grant of summary judgment in favor of the served defendants, nurse Nordahl, Zunker, Dr. Daley, and Charles Miller. Summary judgment is appropriate where the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's decision de novo, *Russell v. Harms*, 397 F.3d 458, 462 (7th Cir. 2005), construing all facts and drawing all reasonable inferences in favor of the non-moving party, *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

Greeno has abandoned his Eighth Amendment claim premised on his chronic constipation, and presses only his claim stemming from the defendants' handling of what was ultimately diagnosed as an esophageal ulcer. Greeno argues that by failing to order further testing or provide him with effective treatment for over two years, the medical staff caused him unnecessary suffering in violation of the Eighth Amendment. Greeno also argues that Miller (as well as the other unserved complaint examiners) violated the Eighth Amendment by failing to adequately address Greeno's formal inmate complaints regarding his condition.

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component. To satisfy the objective component, a prisoner must dem-

onstrate that his medical condition is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted); *see also Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *See Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005). To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The officials must know of and disregard an excessive risk to inmate health; indeed they must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Farmer*, 511 U.S. at 837. This is not to say that a prisoner must establish that officials intended or desired the harm that transpired. *Walker*, 293 F.3d at 1037. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk. *Id.* Additionally, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

The defendants do not dispute, nor could they, that Greeno suffered from an objectively serious medical condition. As we observed the first time Greeno appealed, a lay person would recognize the need for a doctor's care to treat severe heartburn and frequent vomiting. *Greeno*, 2001 WL 721026, at *4; *see also Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 36-37 (8th Cir. 1995) (inability to keep food down, ultimately diagnosed as adenocarcinoma of the esophagus and stomach, is a serious medical need); *Massey v. Hutto*, 545 F.2d 45, 46-47 (8th Cir. 1976) (ulcers constitute serious medical need).

The dispute on appeal, then, turns on the subjective component. Greeno maintains that a factfinder could infer deliberate indifference from the defendants' ongoing refusal to investigate his condition or provide him with effective treatment despite his continued pain and suffering. The defendants respond that since Greeno received ongoing medical attention from 1995 until the ulcer was discovered in April 1997, his claim is really nothing more than a dis-agreement with a prescribed course of treatment. They also contend that Greeno lacked "objective" evidence of an ulcer until the April 1997 endoscopy, and so cannot prove that the treatment he received prior to that time was inap-propriate.

Although it is true that neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference, *see Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996) (medical providers' differing opinions as to best treat-ment for prisoner do not amount to deliberate indifference), to prevail on an Eighth Amendment claim "a prisoner is not required to show that he was literally ignored." *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000). The district court missed this critical distinction, concluding that Greeno's claim failed because "his complaints were not ignored." Likewise, the defendants' contention that Greeno's claim fails because he received *some* treatment overlooks the possibility that the treatment Greeno did receive was "so blatantly inappropriate as to evidence intentional mistreat-ment likely to seriously aggravate" his condition. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (internal quota-tions omitted). We think a factfinder could infer as much from the medical defendants' obdurate refusal to alter Greeno's course of treatment despite his repeated reports that the medication was not working and his condition was getting worse.

We start with nurse Nordahl, who began seeing Greeno shortly after he was transferred to Jackson in June 1996. By this time Greeno's condition had deteriorated to the point that he was vomiting on a regular basis and consuming large quantities of Maalox in an attempt to combat his heartburn, nausea, and vomiting. Remember that despite Greeno's increasingly severe symptoms, in August 1996 nurse Nordahl denied Greeno's request for more Maalox on the grounds that Greeno was taking more than a normal dosage. Consequently, Greeno had nothing to relieve his pain for several days, a fact he brought to nurse Nordahl's attention in a Health Services Request dated September 16. In response she sent Greeno more ibuprofen (for his back), a drug that individuals with ulcers are advised to avoid.[3] She told him that he had "nothing else available" to him, so he should report any bleeding and take the ibuprofen with food and "CAUTION." Then at the conclusion of Greeno's three-day medical observation in January 1997, Nordahl warned him that if he continued to file inmate complaints and "hassle" the Health Services Unit staff about his condition he would be "locked up" longer the next time. Although nurse Nordahl may have a legitimate explanation for her behavior, her decision to withhold Maalox and give Greeno a medication known to aggravate his esophageal condition, taken together with her threat that Greeno would be "locked up" if he continued to complain, could support the conclusion that she was deliberately indifferent to Greeno's serious medical needs. *See Gil v. Reed*, 381 F.3d 649, 661-63 (7th Cir. 2004).

---

[3] The American Gastroenterological Association web site explains that ibuprofen has been identified as a potential cause of ulcers. That site also warns individuals with peptic ulcers that they should not take ibuprofen. *See* The American Gastroenterological Association, *Peptic Ulcer Disease*, *available at* http://www.gastro.org/clinicalRes/brochures/pud.html.

Although the question is closer, we also think a jury could conclude that Zunker was deliberately indifferent to Greeno's deteriorating medical condition. Like the other medical defendants, Zunker failed to respond to Greeno's persistent requests for a bland diet or acknowledge his repeated contentions that the Maalox was not giving him any relief. As the director of the Bureau of Health Services, Zunker received copies of the inmate complaints that Greeno was filing on a regular basis. These complaints detailed Greeno's severe pain and his repeated requests to be seen by a specialist to confirm or rule out the existence of an ulcer. Greeno also wrote Zunker in May 1996 explaining that nothing was being done for him despite his inability to find food that would not irritate his stomach or cause him to vomit. And in January 1997 Greeno informed her that he was using five or six bottles of Maalox weekly and still vomiting and experiencing unrelenting heartburn. Instead of responding, Zunker turned Greeno's letters over to other prison staff, who Greeno claims did nothing to assist him. The possibility that Zunker and nurse Nordahl did not do more for Greeno because they thought he was malingering and did not really have a severe medical need is an issue for the jury. *See Walker*, 293 F.3d at 1040.

Likewise, a jury could find deliberate indifference from Dr. Daley's refusal over a two-year period to refer Greeno to a specialist or authorize an endoscopy. The defendants claim the delay was justifiable because Greeno had no "objective" evidence of a serious medical need until April 1997. At that time, the argument goes, Dr. Daley approved the endoscopy, which revealed the ulcer "and led to immediate successful treatment." First of all, there is no requirement that a prisoner provide "objective" evidence of his pain and suffering—self-reporting is often the only indicator a doctor has of a patient's condition. *See Cooper v. Casey*, 97 F.3d 914, 916-17 (7th Cir. 1996) ("[T]he fact that a condition does not produce "objective" symptoms does not entitle the

medical staff to ignore it. . . . [S]ubjective, nonverifiable complaints are in some cases the only symptoms of a serious medical condition."). Moreover, the defendants fail to acknowledge that Greeno spent two years *trying* to obtain "objective" evidence, but was prevented from doing so by Dr. Daley and the other medical providers. The possibility of an ulcer was first noted in Greeno's chart in August 1995. For the next year-and-a-half the defendants doggedly persisted in a course of treatment known to be ineffective, behavior that we have recognized as a violation of the Eight Amendment. *See Kelley v. McGinnis*, 899 F.2d 612, 616-17 (7th Cir. 1990) (per curiam) (prisoner could prevail on Eighth Amendment claim with evidence that defendants "gave him a certain kind of treatment knowing that it was ineffective").

In addition to denying Dr. Avestruz's January 1997 request that Greeno be referred to a specialist, Dr. Daley then issued an emphatic ban on treatment for Greeno. Dr. Daley's March 1997 directive that Greeno was to receive "*no* pain medications" and "*no* gastroscopy" (emphasis in original) reinforces Greeno's theory that the repeated refusal to uncover or effectively treat his condition was a "gratuitous cruelty." *See Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999). The fact that the endoscopy, when finally performed, did lead to successful treatment makes it all the more obvious that Dr. Daley and the other medical staff should have responded earlier to Greeno's requests for further testing. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (Eighth Amendment violated when authorities expose inmates to " 'undue suffering' " by denying reasonable requests for medical treatment); *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990) (Eighth Amendment claim stated with allegations of multiple instances when prison doctor "insisted on continuing courses of treatment that the doctor knew were painful [or] ineffective").

Of the served defendants, that leaves Charles Miller, the "corrections complaint appeals examiner" who handled Greeno's appeals from at least seven of his inmate complaints. Greeno contends that Miller was deliberately indifferent to his medical needs because he failed to investigate the complaints or remedy the medical defendants' failure to provide appropriate treatment. Our review of the record, however, reveals that Miller reviewed Greeno's complaints and verified with the medical officials that Greeno was receiving treatment. We do not think Miller's failure to take further action once he had referred the matter to the medical providers can be viewed as deliberate indifference. As the Third Circuit put the matter in *Spruill*,

> If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

372 F.3d at 236.

We think these observations apt here, and decline to extend responsibility for Greeno's medical care to Miller. Perhaps it would be a different matter if Miller had ignored Greeno's complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to the medical providers who could be expected to address Greeno's concerns. *See Hernandez v. Keane*, 341 F.3d 137, 148 (2d Cir. 2003) (no deliberate indifference on part of grievance reviewer who delegated responsibility for investigating inmate's complaints about his medical needs to other prison staff); *Durmer v.*

*O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (non-medical professionals not deliberately indifferent for failing to respond to inmate's complaints when prisoner is ostensibly under care of medical experts).

We turn now to the unserved defendants. We asked appointed counsel to brief the issue of whether the district court erred in dismissing Greeno's claims against the unserved defendants for failure to state a claim in light of our previous ruling that Greeno had stated a claim against those defendants. Not surprisingly, counsel responded that yes, the district court erred. We agree.

Our June 25, 2001 order reversing and remanding Greeno's case for the first time holds in no uncertain terms that Greeno's complaint stated an Eighth Amendment claim against Ridgely, Sullivan, Jenkins, Avestruz, Lloren, Yray, and Bergstad. *See Greeno*, 2001 WL 721026, at *4. We are thus hard-pressed to understand the district court's decision to dismiss Greeno's claims against the seven unserved defendants "for failure to state a claim for relief under federal law." Our decision that Greeno had stated a claim against those defendants was the law of the case, and absent exceptional circumstances not present here the district court was bound to follow it. *See Law v. Medco Research, Inc.*, 113 F.3d 781, 783 (7th Cir. 1997); *see also Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("In a hierarchical system, decisions of a superior court are authoritative on inferior courts. [D]istrict judges must follow the decisions of this court whether or not they agree.").

Despite this error, we can affirm the judgment as to Ridgely, Jenkins, Sullivan, and Dr. Avestruz because it is clear from the evidence in the record that they would be en-

titled to summary judgment.[4] Ridgely, Jenkins, and Sullivan are all non-medical, administrative employees who handled Greeno's inmate complaints. Ridgely and Jenkins are "complaint examiners" who process an inmate's initial complaint and conduct any necessary investigation into the inmate's claims. Sullivan was the Department of Corrections Secretary at the time, and handled Greeno's appeals from his inmate complaints. As for Ridgely, Greeno concedes that he was properly dismissed because he dealt only with complaints related to Greeno's constipation claim, which he voluntarily dismissed.

Of the non-medical defendants, that leaves inmate complaint examiner Lyn Jenkins and former Department of Corrections' Secretary Michael Sullivan. Greeno's claim against them fails for much the same reason as his claim against Miller fails. As for Jenkins, the record reveals that he responded to Greeno's complaints by speaking to the appropriate members of the Health Services Unit, who assured him that Greeno's concerns were being addressed. For example, when Greeno demanded in March 1997 that Dr. Daley be required to send him to a specialist, Jenkins's notes reveal that he contacted "Oxbow Staff, HSU Staff and Clinical Staff regarding the history and progress" of Greeno's situation. Jenkins's investigation prompted a multi-disciplinary meeting with the various departments involved in Greeno's treatment. This type of response cannot be equated with deliberate indifference. Jenkins investigated Greeno's complaints and relied on the assurances of the medical staff that Greeno was receiving treatment.

---

[4] We note that there has already been discovery in this case, and Greeno's counsel on appeal does not identify additional evidence that Greeno might obtain to assist him in staving off summary judgment. In fact, counsel lumps the served and unserved defendants together in arguing that the evidence permits Greeno to withstand summary judgment.

Although the medical staff may be liable because that treatment was often woefully inadequate, Jenkins's failure to realize the potential gravity of the situation does not amount to deliberate indifference. *See Spruill*, 372 F.3d at 236; *Hernandez*, 341 F.3d at 148. Summary judgment would have likewise been appropriate in favor of Sullivan, whose role was limited to handling several appeals from decisions of the complaint examiners. Nothing in the record indicates that Sullivan shirked his duty in any way or failed to appropriately handle the claims.

We also think it apparent from the record that Dr. Avestruz was not deliberately indifferent to Greeno's needs. Within days of replacing Dr. Yray in January 1997, Dr. Avestruz requested that Greeno be allowed to see a specialist, but Dr. Daley, recall, denied her request. In early April 1997 she tried to prescribe Prilosec for Greeno after he returned from Dodge, where he had used Prilosec and received relief from his symptoms. But that attempt too was blocked by Dr. Daley. Dr. Avestruz also instructed the Health Services staff to give Greeno Tylenol instead of ibuprofen, which aggravated his esophageal condition. These facts demonstrate that although Dr. Avestruz's efforts to treat Greeno may have been thwarted by other staff, no reasonable factfinder could conclude that she was deliberately indifferent to Greeno's serious medical needs.

In sum, the evidence in the record reveals that Greeno could not sustain an Eighth Amendment claim against Ridgely, Jenkins, Sullivan, and Dr. Avestruz. We thus affirm their dismissal, but on different grounds than those given by the district court. *See Stanciel v. Gramley*, 267 F.3d 575, 579-80 (7th Cir. 2001) (court's error in dismissing for improper service certain defendants who had been served was harmless where allegations against dismissed defendants mirrored allegations against defendants that jury found not liable); *see also Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (recognizing our authority to affirm dismissal on any ground supported by the record).

We cannot, however, say the same for the remaining un-served medical defendants, Dr. Lloren, Dr. Yray, and Bergstad, the nurse manager of the Bureau of Health Services. These three defendants were well aware of Greeno's condition, and all three repeatedly refused to prescribe a bland diet for Greeno or explore other options when it was clear that the Maalox was not providing him relief. Greeno should thus be given a chance to serve them with process and present his case against them.

That leaves the district court's denial of Greeno's motion for the appointment of counsel, *see* 28 U.S.C. § 1915(e)(1), which we review for an abuse of discretion, *Weiss v. Cooley*, 230 F.3d 1027, 1034 (7th Cir. 2000). Greeno first moved for the appointment of counsel in June 2000, before the court dismissed his case under § 1915A. The district court did not rule on Greeno's motion until August 2001, shortly after we reversed and remanded Greeno's case. In analyzing Greeno's request, the court considered the following factors listed in *Maclin v. Freake*, 650 F.2d 885, 887-89 (7th Cir. 1981): the plaintiff's likelihood of success, the nature of the factual issues, the complexity of the legal issues, and the plaintiff's ability to represent himself. The court concluded that Greeno's case was "both factually simple and legally straightforward" and that his pleadings demonstrated his ability to represent himself. Greeno later filed two more motions asking the district court to reconsider its denial of his request for counsel, but the district court denied both motions.

We see several problems with the district court's analysis. First, the district court's reliance on the factors in *Maclin* was misplaced. In *Farmer v. Haas* we discarded *Maclin*'s multifactor test in favor of the following more straightforward inquiry: "given the difficulty of the case, did the plaintiff appear to be competent to try it himself and, if not, would the presence of counsel have made a difference in the outcome?" 990 F.2d 319, 322 (7th Cir. 1993). Using this

inquiry as a guide, we conclude that the district court abused its discretion by denying Greeno's request for counsel.

As an initial matter, we respectfully disagree with the district court's assessment of Greeno's case as "factually simple and legally straightforward." As Greeno points out, his medical records, letters, health services requests, and inmate complaints span over two years. His case is also legally more complicated than a typical failure-to-treat claim because it requires an assessment of the adequacy of the treatment that Greeno did receive, a question that will likely require expert testimony. *See Swofford v. Mandrell*, 969 F.2d 547, 552 (7th Cir. 1992) (pointing out that "difficult and subtle question" of state of mind required for deliberate indifference is too complex for pro se plaintiff to understand and present to jury). We also agree with Greeno that his inability to serve seven of the defendants with process despite repeated attempts is illustrative of his inability to try the case by himself. Finally, as Greeno's success on appeal illustrates, the assistance of counsel would likely have made a difference in Greeno's ability to withstand summary judgment. In sum, when considering Greeno's motion using the inquiry laid out in *Farmer*, we conclude that the court abused its discretion by denying Greeno's motion for appointed counsel.

### III.

For the foregoing reasons, we reverse the district court's denial of Greeno's motion for the appointment of counsel. We vacate the district court's grant of summary judgment in favor of George Daley, Sharon Zunker, and Judith Nordahl, and affirm the judgment in favor of Charles Miller. We also affirm the district court's dismissal of Greeno's claim against Nerissa Avestruz, William Ridgely, Lyn Jenkins, and Michael Sullivan, but on grounds other

than those stated by the district court. Finally, we vacate the dismissal of Greeno's claims against Jose Lloren, Rizalino Yray, and Sharon Bergstad and remand so that Greeno may serve them with process. Circuit Rule 36 shall apply on remand.

A true Copy:

    Teste:

                              _____
                             *Clerk of the United States Court of Appeals for the Seventh Circuit*