NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 21, 2011[*]
Decided September 28, 2011

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 11-1387

| | |
|---|---|
| LEE BLANKENSHIP, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
|     *v.* | No. 10-542-GPM |
| | |
| SALEH OBAISI, KIMBERLY BIRCH, | G. Patrick Murphy, |
| JOHN SHEPHERD, DONALD | *Judge.* |
| LARSON, DAN FIELD, and JOHN | |
| COX, | |
|     *Defendants-Appellees.* | |

**O R D E R**

Lee Blankenship, an inmate of the Illinois Department of Corrections, claims in this lawsuit under 42 U.S.C. § 1983 that prison doctors and administrators are violating the Eighth Amendment by failing to provide adequate care for an arm injury and foot

---

[*]The appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* FED. R. APP. P. 34(a)(2)(C).

condition. The district court dismissed the suit at screening on the ground that Blankenship's complaint fails to state a claim. *See* 28 U.S.C. § 1915A. We conclude that the suit should have proceeded as against one of the six defendants, and, accordingly, we vacate the dismissal in part and remand for further proceedings.

Blankenship's complaint was dismissed at the pleading stage, so for purposes here we accept his allegations as true and draw all inferences in his favor. *See Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011). In October 2006 Blankenship injured his left arm between the biceps and forearm, causing severe pain. At the time he was housed at Logan Correctional Center and was being treated by Dr. Saleh Obaisi, who opined that Blankenship was suffering from tendinitis. Dr. Obaisi prescribed an anti-inflammatory, which did not alleviate Blankenship's pain.

Blankenship continued to experience severe pain when he was transferred to Vienna Correctional Center in 2007, and he continued to seek medical attention. In July 2008 he saw Dr. John Shepherd, who initially prescribed an anti-inflammatory but discontinued the medication after x-rays of Blankenship's arm did not reveal an abnormality. The pain continued, however, so Dr. Donald Larson, another prison doctor who saw Blankenship twice in the latter half of 2008, prescribed an exercise regimen. When that course of treatment proved to be painful and ineffective, Blankenship consulted Dr. Shepherd again in December 2008. This time Dr. Shepherd sent him to Southern Orthopedic Associates, where a specialist recommended surgery after detecting a probable bone spur and several subchondral cysts indicative of osteoarthritis. Doctors delayed the surgery, however, because Blankenship displayed an abnormal EKG and needed to be evaluated for a myocardial ischemia. A cardiologist diagnosed an abnormality indicative of a minimal amount of ischemia but concluded that the risk of a heart attack during surgery was low enough to proceed. In July 2009 an orthopedic surgeon drained the cysts and removed a bone spur.

When the surgeon removed the sutures two weeks later, he told Blankenship that a follow-up examination would be conducted in six to eight weeks. But when Blankenship asked the medical director of the prison, Dr. Kimberly Birch, about scheduling that appointment and arranging physical therapy, she responded ambivalently. No follow-up appointment was scheduled, and no physical therapy was authorized. When Blankenship saw Dr. Birch again, first in December 2009 and then in July 2010, he complained of severe pain and diminished mobility, but Dr. Birch still refused to schedule a follow-up appointment with the orthopedic surgeon. According to Blankenship, Dr. Birch's assessment of his arm was that "it moves" and thus "as far as being able to see the orthopedic doctor again you are not going back there." Additionally, in November and December 2009, Blankenship complained to Dr. Birch that several toes on his left foot were

numb and purple. Her response, after looking at his toes, was to tell Blankenship that he should wear different shoes, even though he protested that nothing was wrong with his shoes. Blankenship still cannot feel the affected toes. When he later filed a grievance against Dr. Birch, she responded, not by asserting that Blankenship continued to receive adequate treatment for his medical conditions, but by denying that he ever complained about his arm after his surgery.

Blankenship sued Drs. Obaisi, Shepherd, Larson, and Birch. He also sued two prison employees who responded to his grievance against Dr. Birch. The district court dismissed the complaint in its entirety for failure to state a claim. The court reasoned that Blankenship's allegations do not suggest that any of the defendants showed deliberate indifference to his medical needs. Focusing on the medical care that Blankenship received for his arm up to the point of having surgery, the court concluded that his "allegations amount to quibbles with the courses of treatment selected by his physicians."

On appeal Blankenship contends that he sufficiently pleaded that the defendants have been deliberately indifferent to his arm pain and the numbness in his toes. As to Dr. Obaisi, the allegations fall outside the statute of limitations because he treated Blankenship more than two years before this lawsuit was filed. *See Evans v. City of Chi.*, 434 F.3d 916, 934 (7th Cir. 2006). And with the exception of his allegations against Dr. Birch, Blankenship's assertion that he received inadequate care from the defendant physicians boils down to a disagreement with their exercise of medical judgment. That unwillingness to accept the professional judgment of the physicians who treated him is not a basis for claiming deliberate indifference because, in the case of Drs. Shepherd and Larson, the treatment provided was not "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously to aggravate' his condition." *See Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)); *see also Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008); *Johnson v. Doughty*, 433 F.3d 1001, 1012–13 (7th Cir. 2006). Indeed, Blankenship concedes that Drs. Shepherd and Larson did not ignore his complaints but instead prescribed a series of treatment options aimed at alleviating his pain, and ultimately referred him to a specialist.

Dr. Birch is a different matter. Prison physicians will be liable under the Eighth Amendment if they intentionally disregard a known, objectively serious medical condition that poses an excessive risk to an inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Lee v. Young*, 533 F.3d 505, 509–10 (7th Cir. 2008); *Greeno*, 414 F.3d at 653. A medical condition need not be life threatening to qualify as "objectively serious"; it is enough "that a reasonable doctor or patient" would deem the condition "important and worthy of

comment or treatment.*" Hayes v. Snyder*, 546 F.3d 516, 523–24 (7th Cir. 2008) (quotation marks and citation omitted).

After his surgery Blankenship has continued to experience severe pain that has immobilized his left arm. Nothing in his complaint or its attachments supports the district court's assumption that "medical personnel have done everything they can do" to treat the underlying cause of that pain, but even if they have, chronic pain is itself a serious medical condition that must be addressed. *See id*. at 524; *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003). And a physician would recognize that persistently numb and discolored toes are not normal, especially when, as here, the patient (who would know) has told the doctor that her "diagnosis" of uncomfortable shoes is mistaken. The seemingly minor symptoms Blankenship alleges are equally consistent with signs of cyanosis and Raynaud's Syndrome. *See* STEDMAN'S MEDICAL DICTIONARY 1911 (28th ed. 2006); MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/article/003215.htm (last visited Sept. 9, 2011). And although actual investigation may disclose a presently nonthreatening condition, a medical issue may be serious if it could lead to further significant injury. *See Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

So the case against Dr. Birch comes down to whether Blankenship has adequately alleged the subjective element of his deliberate-indifference claim. To state a claim, Blankenship did not need to allege that his medical conditions were literally ignored. *See Roe*, 631 F.3d at 857–58; *Hayes*, 546 F.3d at 523–24; *Greeno*, 414 F.3d at 653–54. Indeed, even if he received some level of treatment, Blankenship can succeed on his claim if Dr. Birch's response to his complaints was "'blatantly inappropriate.'" *Roe,* 631 F.3d at 858 (quoting *Greeno,* 414 F.3d at 653–54). She did authorize surgery, of course, but Blankenship's point—which for now we must accept as true—is that Dr. Birch did nothing more after that surgery proved ineffective. And, according to what Blankenship says, Dr. Birch never even investigated the cause of the continuing numbness and discoloration of his toes.

If what Blankenship says is true, a factfinder can infer that Dr. Birch deliberately ignored his ailments, especially given her glib comment that his arm was fine because "it moves." She ignored his surgeon's instructions that Blankenship return for follow-up care, which raises an inference of deliberate indifference. *Walker v. Sheahan*, 526 F.3d 973, 976, 980 (7th Cir. 2008) (explaining that lack of prompt follow-up care may evidence deliberate indifference); *Gil v. Reed*, 381 F.3d 649, 663–64 (7th Cir. 2004) (defendant disregarded surgeon's post-operative instructions); *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (defendant disregarded specialist's instructions); *Murphy v. Walker*, 51 F.3d 714, 720 (7th Cir. 1995) (lack of follow-up care). That follow-up care might have prevented the surgery from being unsuccessful in the long run. What's more, when it became apparent to Dr. Birch that Blankenship was still experiencing severe pain after his surgery, she provided no treatment

at all for the pain or for the underlying conditions.  What she did instead is tell the grievance officer—falsely, we must assume—that Blankenship had never even reported that he was in pain after his surgery. Blankenship thus presents a plausible account that, if true, would establish that Dr. Birch demonstrated deliberate indifference to his need for medical care, and it follows that the district court erred in dismissing the complaint as against this defendant.

Blankenship also argues that his allegations against the two non-physician administrators should have survived the pleading stage, but this argument is meritless. When reviewing grievances about medical treatment, administrators are permitted to rely on the judgment of medical personnel. *Berry*, 604 F.3d at 440; *Hayes*, 546 F.3d at 526–28. Blankenship does not allege that these defendants were personally involved in his medical care. They reviewed his medical records and relied on Dr. Birch's representations that his arm injury had been adequately cared for and that a change in footwear would alleviate his foot numbness. Blankenship asserts that the information supplied by Dr. Birch in response to his grievance is false, but, even if he can prove this allegation, the two administrators were entitled to rely on Dr. Birch's representations. *See Hayes*, 546 F.3d at 527.

Accordingly, the dismissal of the complaint is VACATED as to Dr. Birch, and the case is REMANDED for further proceedings as against her. In all other respects the judgment is AFFIRMED.