K. MICHAEL MOORE, UNITED STATES CHIEF DISTRICT JUDGE
THIS CAUSE is before the Court on six motions to dismiss. Armor Mot. (ECF No. 44); Benoit Mot. (ECF No. 45); Kotzen Mot. (ECF No. 46); Dupiche Mot. (ECF No. 47); Waddle Mot. (ECF No. 48); Israel Mot. (ECF No. 48). Plaintiff Thomas J. Davies, Jr. as plenary guardian of Daniel K. Davies, has responded. Omnibus Response (ECF No. 54); Israel Response (ECF No. 58). Defendants have replied. Omnibus Reply (ECF No. 55); Israel Reply (ECF No. 61). The motions are now ripe for review.
I. BACKGROUND
In May 2015, Daniel Davies was arrested and charged with aggravated battery. Am. Compl. (ECF No. 1) at ¶ 21. He was brought to the Broward County Sheriff's Office Main Jail, which is operated and maintained by the Broward County Sheriff's Office ("BSO"). Id. at ¶ 24. Since 2004, BSO has contracted Armor Correctional Health Services, Inc. ("Armor") to provide *1306 medical care to inmates of the Broward County jail. Id. at ¶ 89.
When Davies arrived at BSO, EMT Waddle, an Armor employee, medically prescreened Davies. Id. at ¶ 23. Davies did not have any visible injuries.[1] Id. at ¶ 28. Deputies Magliore and McKenzie then escorted Davies-who was not injured at the time-into a cell that was not under surveillance. Id. at ¶¶ 29-30. Approximately six minutes later, Davies left the cell injured and very upset. Id. at ¶ 37. He told BSO employees that Deputies Magliore and McKenzie had assaulted him in the cell. Id. at ¶ 38. Davies was then examined by EMT Waddle, who put Davies on suicide watch.[2] Id. at ¶¶ 40-41. Although a "suicide watch" designation mandates constant observation, Davies was placed in isolation and remained alone from 2:51 a.m. to 5:40 a.m. Id. at ¶ 42, 44-45.
At 5:40 a.m. another inmate noticed that Davies was unconscious. Id. at ¶ 48. Armor employees, including Nurse Dupiche and EMT Waddle, immediately arrived to assist Davies. Id. at ¶¶ 49-51. EMT Waddle prepared an Urgent Medical Care Record stating that Davies was discovered on the floor of his cell unresponsive and bleeding from the mouth. Id. at ¶ 50. Nurse Dupiche and Deputy McKenzie lifted Davies, who was unconscious, and brought him to the third floor infirmary. Id. at ¶¶ 51, 331.
Dr. Kotzen, an Armor employee, was charged with control of Davies's care and made decisions about treatment. Id. at ¶¶ 298-99. Thus, the following treatment took place under Dr. Kotzen's care. At 6:06 a.m. Davies, still unresponsive, was placed on a makeshift bed on the floor in the infirmary. Id. at ¶ 52. At 7:29 a.m., Nurse Dupiche checked on Davies, who was immobile. Id. at ¶ 53. About an hour later, Nurse Benoit-who eventually wrote a report stating that Davies was swollen and bleeding-wiped blood off of Davies's face. Id. at ¶¶ 54, 317.
Over seven hours after he was found unconscious and bleeding, Davies was transported to Broward General Medical Center. Id. at ¶ 55. Armor labeled the transport "non-emergency" and classified Davies's condition on release as "good." Id. An examination at the hospital revealed that Davies had severe swelling on the right side of his face, swelling on the left side of his eye, pain in his ribs, and a large subdural hematoma on the left side of his brain. Id. at ¶ 63. Davies had two emergency brain surgeries. Id. ¶¶ 63-64. The treating neurosurgeon reported that Davies's injuries were consistent with an impact to the right side of his face, which would cause the left side of Davies's brain to make contact with the inside of his skull. Id. at ¶ 66.
Davies has suffered permanent brain damage. Id. at ¶¶ 68, 74. He is wheelchair bound and requires total assistance with mobility and all activities of daily living. Id. at ¶ 73. He lives in a nursing and rehabilitation facility. Id. at ¶ 75. Plaintiff alleges that Davies's prognosis would have been better had Armor transported him to the hospital sooner. Id. at ¶ 72.
Plaintiff alleges that Armor consistently declines to provide immediate emergency medical care-which is more expensive to Armor under the terms of its contract with *1307 BSO-and instead permits inmates to die or suffer serious injuries.[3] Id. at ¶¶ 88, 94. Plaintiff specifically identifies ten people who have died in BSO custody while under Armor's care, detailing causes of death that Plaintiff contends required immediate emergency care (sepsis, pneumonia, starvation, hemorrhaging, etc.). Id. at ¶ 99. Plaintiff alleges that BSO knew of Armor's practice. Id. at ¶ at 89.
In March 2018, Plaintiff sued several defendants-Scott Israel, as Constitutional Deputy of Broward County Sheriff's Office; Deputy McMorris Magliore; Deputy Germaine McKenzie; Armor Correctional Health Services, Inc.; Doctor Stephen Kotzen; Nurse Esner Benoit; Nurse Francis Dupiche; and EMT Nicolas Waddle- under 42 U.S.C. 1983 and state law. Compl. (ECF No. 1). In May 2018, Plaintiff filed an amended complaint. Am. Compl. (ECF No. 38). As detailed below, certain defendants have moved to dismiss, challenging only some of the claims set forth in the Amended Complaint.[4]
II. LEGAL STANDARD
To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). This requirement "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." Twombly , 550 U.S. at 555, 127 S.Ct. 1955 (internal citation and alteration omitted). When considering a motion to dismiss, the court takes the factual allegations as true and construes them in the light most favorable to the plaintiff. Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008).
III. DISCUSSION
A. 42 U.S.C. § 1983 Claims (Deliberate Indifference) [5]
" Section 1983 creates a private right of action to vindicate violations of *1308 rights, privileges, or immunities secured by the Constitution and laws of the United States." Denham v. Corizon Health, Inc. , 675 F. App'x 935, 940 (11th Cir. 2017) (internal citation and quotation marks omitted). "Under the statute, every person who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages." Id. (internal citation and quotation marks omitted). "Local governing bodies are persons for purposes of § 1983 and can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy ... officially adopted and promulgated by that body's officers." Id. (quoting Monell v. Dep't of Soc. Servs. of N.Y. , 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ). Municipalities are also subject to suit under § 1983, as is a private entity like Armor when it "performs a function traditionally within the exclusive prerogative of the state, such as contracting with the county to provide medical services to inmates." Id.
i. Nurse Benoit, Dr. Kotzen, Nurse Dupiche, and EMT Waddle
Plaintiff sues Nurse Benoit, Dr. Kotzen, Nurse Dupiche, and EMT Waddle contending that they were individually deliberately indifferent to his serious medical needs. Am. Compl. at 53-63 (Counts 12-15). "The Eighth Amendment prohibits 'deliberate indifference to serious medical needs of prisoners.' " Rutledge v. Alabama , 724 F. App'x 731, 735 (11th Cir. 2018). "To establish an Eighth Amendment violation, a plaintiff must show: (1) a serious medical need; (2) a defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Id. "Deliberate indifferent requires: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Id. "[C]onduct that is more than mere negligence includes grossly inadequate care, administering easier but less effective treatment, treatment that is so cursory as to amount to no medical care at all, and, in certain situations, delaying necessary medical treatment." Id. "A defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." Hill v. Dekalb Reg'l Youth Det. Ctr. , 40 F.3d 1176, 1187 (11th Cir. 1994).
Here, Plaintiff alleges facts plausibly suggesting that Nurse Benoit, Dr. Kotzen, Nurse Dupiche, and EMT Waddle acted with deliberate indifference to his serious medical needs. As to the first two prongs-subjective knowledge of a risk of serious harm and disregard of that risk-Plaintiff alleges that each Defendant played a different role in tending to Plaintiff when he was unconscious and bleeding but nonetheless disregarded that serious risk by failing to facilitate Plaintiff's immediate emergency transfer to a hospital by, for example, calling 911. Rutledge , 724 F. App'x at 735. In this way, Defendants each participated in delaying necessary treatment for no apparent medical reason, which may constitute deliberate indifference. Hill , 40 F.3d at 1187. Although the law is well settled, Defendants argue that Plaintiff has failed to allege that their conduct rose to the level of deliberate indifference. Benoit Mot. at 4-6; Kotzen Mot. at 5-8; Dupiche Mot. at 3-6; Waddle Mot. at 4-8. But as set forth above, this is contrary to the weight of the law. Accordingly, Defendants' Motions to Dismiss are DENIED as to Counts 12-15.
ii. Sheriff Israel & Armor Correctional Health Services
Plaintiff sues Sheriff Israel and Armor under a theory of municipal liability, arguing that they showed deliberate indifference *1309 to the constitutionally suspect consequences of Armor's custom or policy-delaying the emergency transport of critically ill inmates to a hospital given the increased costs associated with providing prompt emergency transportation and care to inmates. Am. Compl. at 41-52 (Counts 9-11).
To state a § 1983 claim against Sheriff Israel and Armor, Plaintiff must allege three things: (1) a violation of his constitutional rights; (2) a custom or policy that was deliberately indifferent to that constitutional right; and (3) a causal link between Armor's policy or custom and the violation. Sharp v. City of Huntsville, Ala. , 730 F. App'x 858, 860 (11th Cir. 2018). Here, Plaintiff has alleged facts plausibly suggesting that he suffered a constitutional violation- deliberate indifference to his serious medical needs-as a result of Armor's alleged custom or policy of providing delayed emergency medical treatment to inmates.
First, as set forth above, Plaintiff has alleged that Armor and its employees acted with deliberate indifference to his serious medical needs. See supra pp. 1307-08. Second Plaintiff has alleged facts plausibly suggesting that Armor had a custom or policy that constituted deliberate indifference to Plaintiff's serious medical needs. "In institutional level challenges to prison health care, systemic deficiencies can provide the basis for a finding of deliberate indifference ... [and] [r]epeated examples of delayed or denied medical care may indicate a deliberate indifference by prison authorities to the suffering that results." Keather v. Armor Corr. Health Servs. , No. 16-cv-62950, 2018 WL 1981133, at *6 (S.D. Fla. April 26, 2018) (citing Todaro v. Ward , 565 F.2d 48, 52 (2d Cir. 1977) ). Finally, Plaintiff has plausibly alleged that the policy or custom of delaying medical treatment caused the alleged deliberate indifference to Davies's serious medical needs.
Sheriff Israel argues that he cannot be held liable because he was entitled to rely on Armor to provide constitutionally adequate care and treatment. Israel Mot. at 10-11. However, to shield Sheriff Israel from liability, his reliance on Armor must be justifiable. See Keather , No. 16-cv-62950, 2018 WL 1981133 at *6 (citing Greeno v. Daley , 414 F.3d 645, 656 (7th Cir. 2005) ("If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that a prisoner is in capable hands."). Plaintiff's allegations that multiple deaths occurred because of Armor's insufficient care are enough to plausibly suggest that Sheriff Israel's reliance on Armor was unjustified.[6]
Sheriff Israel and Armor both argue that other examples of delayed treatment that Plaintiff points to are not "substantially similar" to the conduct that contributed to Plaintiff's injuries. Israel Mot. at 15-18; Armor Mot. at 8-9. But to identify systemic deficiencies, "incidents alleged by a plaintiff do not have to be precisely identical to the facts in the plaintiff's case, but must be similar *1310 enough to make out a claim that the defendant has adopted a wide-spread practice of permitting its officers' to commit a particular act." Fisher v. Miami-Dade Cty. , 114 F.Supp.3d 1247, 1253 (S.D. Fla. 2015). Here, Plaintiff's allegations are clear: Armor habitually delays taking inmates who require emergency medical care to the hospital for treatment, thus causing serious injury and death. The Court therefore concludes that Plaintiff has plausibly alleged facts suggesting a wide-spread custom or policy that encourages prison officials to delay emergency medical treatment to critically ill patients. Accordingly, Defendants' Motions to Dismiss are DENIED as to Counts 9-11.[7]
B. State Law Claims (Negligent Retention and Supervision)
i. EMT Waddle
Plaintiff argues that Armor negligently retained and supervised EMT Waddle in violation of Florida state law, alleging that Armor knew or should have known that EMT Waddle was dangerous, incompetent, and required more supervision. Am. Compl. ¶¶ 62-63. To state a claim for negligent supervision and retention under Florida law, a plaintiff must show that defendant "was put on notice of the 'harmful propensities of the employees.' " Mercado v. City of Orlando , 407 F.3d 1152, 1162 (11th Cir. 2005). Plaintiff alleges that Armor was aware of EMT Waddle's harmful propensities to lie and subject inmates to dangerous conditions. Am. Compl. ¶¶ 78-87, 340-57. Aside from conclusory allegations, however, Plaintiff has not set forth any facts suggesting that Armor was aware of EMT Waddle's harmful propensities before the date of Plaintiff's injuries. See id. On this basis, the Court concludes that Plaintiff has failed to allege a state law claim against Armor for the negligent retention and supervision of EMT Waddle. Accordingly, Armor's Motion to Dismiss is GRANTED, without prejudice, as to Count 16.
C. Motion to Strike
i. Punitive Damages
Defendants Nurse Benoit, Dr. Kotzen, Nurse Dupiche, and EMT Waddle argue that the Court should strike from the Amended Complaint Plaintiff's request for punitive damages, contending that Plaintiff has failed to allege that Defendants acted with the requisite "conduct motivated by evil intent" necessary to establish punitive damages. Benoit Mot. at 6-9; Kotzen Mot. at 8-9; Dupiche Mot. at 6-7; Waddle Mot. at 9. As Plaintiff argues in opposition, punitive damages are available "where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference to federally protected rights." Barnett v. MacArthur , 715 F. App'x 894, 904 (11th Cir. 2017). Here, as set forth above, Plaintiff has plausibly alleged reckless indifference to federally protected rights and may therefore be entitled to punitive damages. Accordingly, *1311 Defendants' Motion to Strike Plaintiff's punitive damages award is DENIED.
ii. Allegations that Defendant Waddle Committed Perjury
EMT Waddle argues that the Court should strike from the Amended Complaint all allegations that he committed perjury, contending that those allegations are irrelevant to Plaintiff's claims. Waddle Mot. at 8-9. As Plaintiff argues, however, these allegations are relevant to Plaintiff's claims including the question of whether EMT Waddle's conduct qualifies as "evil intent" or "reckless or callous indifference to the federal protected rights of others" for an award of punitive damages. Response at 18. Accordingly, EMT Waddle's Motion to Stirke allegations that he committed perjury is DENIED.
IV. CONCLUSION
For the foregoing reasons, and UPON CONSIDERATION of the Amended Complaint, the Motions to Dismiss, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED as follows.
• Defendant Armor's Motion to Dismiss (ECF No. 44) is DENIED.
• Defendant Benoit's Motion to Dismiss (ECF No. 45) is DENIED.
• Defendant Kotzen's Motion to Dismiss (ECF No. 46) is DENIED.
• Defendant Dupiche's Motion to Dismiss (ECF No. 47) is DENIED.
• Defendant Waddle's Motion to Dismiss (ECF No. 48) is GRANTED IN PART AND DENIED IN PART as set forth above. Accordingly, Count 16 is DISMISSED WITHOUT PREJUDICE.
• Defendant Israel's Motion to Dismiss (ECF No. 53) is DENIED.
DONE AND ORDERED in Chambers at Miami, Florida, this 10th day of September, 2018.

Davies's Initial Intake Medical Screening reflects that he had abrasions and a bloody lip; however, EMT Waddle later admitted that these notes were created after Davies was transported to the hospital. Id. at ¶¶ 80-82. EMT Waddle also claimed that Davies had reported a history of seizures; however, this information is contradicted by Davies's medical history and also the medical history that Davies provided at the hospital. Id. at ¶ 83.

Plaintiff alleges that EMT Waddle placed Davies on suicide watch to undermine his credibility. Id. at ¶ 84.

Pursuant to an agreement between Armor and BSO, if an inmate requires non-emergency, nonambulatory off-site health care treatment, the Sheriff will provide appropriate transportation services; however, the Sheriff will not transport seriously ill or medically unstable inmates and Armor will bear the costs associated with emergency transport. Id. at ¶ 56. The agreement further states that Armor is responsible for up to $50,000 worth of offsite care per inmate. Id. at ¶ 69. Plaintiff alleges that these contractual provisions incentivize Armor to consistently delay or prevent inmates who need emergency medical attention, like Mr. Davies, from receiving immediate offsite care. Id. at ¶ 71.

Sheriff Israel argues that the Court should not consider the amended pleading as Plaintiff did not obtain leave of Court before filing. Israel Mot. at 22. "A district court's discretion to deny leave to amend a complaint is 'severely restricted' by Fed. R. Civ. P. 15, which stresses that courts should freely give leave to amend 'when justice so requires.' " Woldeab v. Dekalb Cty. Bd. of Educ. , 885 F.3d 1289, 1291 (11th Cir. 2018). The Court will therefore consider the Amended Complaint, upon which Defendants have based their motions to dismiss, and grant Plaintiff leave to amend nunc pro tunc .

"The Fourteenth Amendment secures the rights of pretrial detainees," like Plaintiff. Benson v. Gordon Cty., Ga. , 479 F. App'x 315, 317 (11th Cir. 2012). Nevertheless, courts "evaluate a pretrial detainee's claim of deliberate indifference to his serious medical needs as if it were brought under the Eighth Amendment." Id. Plaintiff argues that the Court should apply an objective reasonableness standard set forth in Kingsley v. Hendrickson , --- U.S. ----, 135 S.Ct. 2466, 2473-76, 192 L.Ed.2d 416 (2015) rather than the heightened deliberate indifference standard. Omnibus Response at 5-7; Israel Response at 5-7. But the standard set forth in Kingsley applies to only excessive force claims. White v. Cochran , No. 16-cv-17490, 2017 WL 6492004, at *2 n.1 (11th Cir. Nov. 27, 2017).

Sheriff Israel also argues that the duty to provide medical care belongs to the Chief Corrections Officer, contending that Plaintiff fails to expressly plead that Sheriff Israel was designated as the Chief Correctional Officer under Florida law. Israel Mot. at 19. Sheriff Israel states that although he "may be designated as the Chief Correctional Officer [it] need not be the case." Id. The Court readily discards this unsupported argument: Sheriff Israel neither points to any authority stating that Plaintiff has an affirmative duty to expressly plead that a defendant sheriff is the designated as the Chief Correctional Officer nor does Sheriff Israel state that he is in fact not the Chief Correctional Officer under Florida law. See Response at 19.

The Court rejects the remaining arguments raised by Sheriff Israel. First, Sheriff Israel argues that Plaintiff has not stated a conspiracy claim. Israel Mot. at 19-22. Plaintiff confirms that he is not pursuing any conspiracy claim against the Defendants. Response at 8. The Court therefore does not address Sheriff Israel's argument that Plaintiff has failed to plead conspiracy. Second, Sheriff Israel argues for the first time in reply that the Court should dismiss Count 6 for failure to state a claim; however, the Court does not consider arguments raised for the first time in a reply. See United States v. Levy , 379 F.3d 1241, 1244 (11th Cir. 2004). Additionally, without offering the Court any legal analysis, Sheriff Israel characterizes the allegations related to Count 8 as conclusory and argues that dismissal of Count 8 is appropriate on this basis. But the Court declines to dismiss Count 8 given that a review of the Complaint plainly refutes Sheriff Israel's contention. See Am. Compl. at 32-36.