Edith DAVIS, as Legal Guardian on behalf of Jane Doe, individually, Plaintiff-Appellant,

v.

DeKALB COUNTY SCHOOL DISTRICT, a Local Education Agency, (LEA), William L. Duncan, Jr., in his Individual and Official Capacity as Principal of Knollwood Elementary School, et al., Defendants-Appellees.

Vicki Lindsay, individually and as Legal guardian on behalf of Jane Doe, Individually, Plaintiff-Appellant,

v.

DeKalb County School District, a Local Education Agency (LEA), William L. Duncan, Jr., in his Individual and Official Capacity as Principal of Knollwood Elementary School, et al., Defendants-Appellees.

Dianna Colton, Individually and as Legal Guardian on behalf of Jane Doe, Individually, Plaintiff-Appellant,

v.

DeKalb County School District, a Local Education Agency (LEA), William L. Duncan, Jr., in his Individual and Official Capacity as Principal of Knollwood Elementary School, et al., Defendants-Appellees.

Nos. 99-14455, 99-14456 and 99-14458.

United States Court of Appeals,

Eleventh Circuit.

Nov. 24, 2000.

Appeals from the United States District Court for the Northern District of Georgia.(Nos. 96-02845-CV-TWT-1, 97-00382-CV-TWT-1, 97-00491-CV-TWT-1), Thomas W. Thrash, Judge.

Before COX, BLACK and FAY, Circuit Judges.

PER CURIAM:

This is a sexual harassment/discrimination suit arising out of the acts of a physical education teacher, Defendant Kelvin Mency ("Mency"), at Knollwood Elementary School. Plaintiffs,[1] appellants here, filed complaints against the DeKalb County School District ("DCSD"), William L. Duncan, Jr., principal of Knollwood Elementary ("Duncan"), and Mency under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"), Title 42 U.S.C. § 1983 ("section 1983"), and Georgia tort law. After consolidating the cases, the district court granted summary judgment in favor of DCSD and Duncan. On appeal, Plaintiffs contend that the district court erred in applying the incorrect legal standard for institutional liability under Title IX, and in concluding that Plaintiffs failed to create a jury question on their section 1983

---

[1]Plaintiffs brought suit individually and as legal guardians of three students Mency molested.

claim. We do not decide whether the district court applied the incorrect standard because we conclude, under

*Gebser*[2] and section 1983 jurisprudence, that Plaintiffs have failed to produce any evidence that Defendants

knew of or acted with deliberate indifference to Mency's misconduct. Accordingly, we affirm the district

court's judgment with respect to both claims.

I.      Factual and Procedural History

Kelvin Mency, a seventh-grade physical education teacher and faculty advisor of the Safety Patrol

at Knollwood Elementary School, sexually molested Plaintiffs during the 1993-1994 school year.[3] There is

no evidence that anyone witnessed any of these events. Moreover, the Plaintiffs never told their parents, legal

guardians, or anyone at school what was happening while the events were occurring. In the fall of 1994, one

of the Plaintiffs confided in a friend that Mency was touching her inappropriately. The friend told a police

officer who lectured at the school, and the police began an investigation into Mency's contact with students.

As a result, Mency resigned from his post. Mency was subsequently convicted on six counts of child

molestation and one count of criminal attempt to commit child molestation, and is currently serving a 20-year

sentence.

After Mency's criminal conviction, Plaintiffs brought this action against the DCSD, Duncan, and

Mency.[4] The complaints alleged violations of Title IX, Section 1983, and Georgia tort law. The district court

consolidated the cases by consent order, and granted summary judgment in favor of DCSD on Plaintiffs' Title

IX claim. The district court concluded that Plaintiffs had failed to produce any evidence that the school board

or school superintendent had actual notice of the sexual harassment. The district court went on to find that

Plaintiffs also failed to produce evidence that any official with supervisory authority knew or should have

known that Mency was molesting Plaintiffs. In addition, the district court granted summary judgment in

---

[2]*Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998).

[3]The district court found undisputed evidence that Mency would tell the Plaintiffs, individually and on different occasions, to meet him in empty classrooms, the physical education equipment room, the teacher's bathroom, or other places where no one could observe what Mency was doing. The district court further found that Mency engaged in such acts as kissing the Plaintiffs, exposing himself, fondling the Plaintiffs and masturbating in front of them. The evidence also showed that Mency sodomized one of the Plaintiffs.

[4]Plaintiffs sued Duncan in his individual and official capacity as Principal of Knollwood Elementary School, and Mency in his individual and official capacity as former teacher at Knollwood. On appeal, Plaintiffs do not argue that the district court erred in dismissing the claim against Duncan in his individual capacity.

favor of Duncan and DCSD on Plaintiffs' Section 1983 claim concluding that Plaintiffs could not show that Defendants either knew that Mency was harassing Plaintiffs or that Defendants acted with reckless disregard to the possibility that he would do so.

Plaintiffs' action against Mency proceeded to trial, and a jury found Mency civilly liable to the Plaintiffs for the amount of $500,000 in compensatory damages and $100,000 in punitive damages. The district court entered final judgment in favor of the Plaintiffs and against Mency in accordance with the verdict. Subsequently, Plaintiffs filed this appeal requesting reversal of the District Court's orders granting summary judgment to DCSD and Duncan.

II.      Discussion

On appeal, Plaintiffs argue that the district court applied the wrong legal standard for the institutional liability of a school district under Title IX. Plaintiffs contend that the evidence, viewed in light of the proper standard, establishes that the principal and other school officials were aware of facts sufficient to alert them to Mency's misconduct and that the school's response was clearly unreasonable in light of the known circumstances. On their section 1983 claim, Plaintiffs contend that they produced sufficient evidence for a jury to find that DCSD and Duncan knew that Mency was a danger to the Plaintiffs or that DCSD and Duncan were deliberately indifferent to facts that put them on notice of the danger. We disagree.

We review the grant of summary judgment de novo. *See Gordan v. Cochran,* 116 F.3d 1438, 1439 (11th Cir.1997). We, like the district court, are required to view the facts in the light most favorable to the non-movant. *See Walls v. Button Gwinnett Bancorp, Inc.,* 1 F.3d 1198, 1200 (11th Cir.1993).

A.      Title IX

Title IX provides, in pertinent part, that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...." 20 U.S.C. § 1681(a). The Supreme Court has recognized an implied private cause of action for money damages in Title IX cases of intentional sexual discrimination. *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 75, 112 S.Ct. 1028, 1038, 117 L.Ed.2d 208 (1992). Moreover, the Court has held that sexual harassment of a student by a teacher constitutes actionable discrimination for the purposes of Title IX. *Id.*

After the district court granted summary judgment in the instant case, the Supreme Court clarified the standard under which a school district may be held liable under Title IX for a teacher's sexual harassment

of a student. *See Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). The Court held that:

> ... a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's program and fails adequately to respond.

*Id.* at 290, 118 S.Ct. at 1999. Moreover, the Court decided that "the response must amount to deliberate indifference to discrimination" for liability to attach. *Id.* The Court concluded that the Lago Vista school district could not be held liable where the only official alleged to have knowledge was the high school principal, and the information consisted of a complaint from parents of other students that the teacher had made inappropriate comments during class. *Id.* at 291, 118 S.Ct. at 2000. This information, the Court reasoned, was "plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student." *Id.*

Following the Supreme Court's decision in *Gebser,* the Eleventh Circuit determined that a Title IX plaintiff must establish two things to survive summary judgment in a cause of action against a school district for the discriminatory acts of its employees: "First, some supervisor with authority to take corrective action was placed on notice of the bad conduct. Second, the supervisor possessing this authority was a school official high enough up the chain-of-command that his acts constitute an official decision by the school district itself not to remedy the misconduct." *Floyd v. Waiters,* 171 F.3d 1264 (11th Cir.), *cert. denied,* --- U.S. ----, 120 S.Ct. 215, 145 L.Ed.2d 181 (1999).

1. Supervisor With Authority to Remedy the Misconduct

The district court held that Plaintiffs could not recover under Title IX, as a matter of law, because the evidence failed to show that the school board or school superintendent had actual notice of the sexual harassment.[5] Alternatively, the district court found no evidence that any school official with supervisory authority had notice that Mency was molesting the three students.[6] We find that it is unnecessary to decide whether Duncan, as principal of Knollwood Elementary, was a supervisory official with authority to take

---

[5]The district court granted summary judgment in the instant case prior to the Supreme Court's decision in *Gebser.* While *Gebser* precludes a damages recovery based upon the imputation of knowledge to a school district, the Supreme Court did not hold that liability must be predicated upon actual notice to the school board or superintendent. Rather, liability could attach upon notice to an "appropriate person." *Gebser,* 524 U.S. at 285-90, 118 S.Ct. at 1997-99.

[6]We need not decide whether the district court's alternative analysis conforms to the rule embraced in *Gebser,* and leave for another day the task of delineating *Gebser's* "appropriate person."

corrective action on behalf of the school district. Assuming, arguendo, that a principal could be such, we find no evidence to support the claim that Duncan acted with deliberate indifference to notice of Mency's misconduct.

2. Actual Notice

A school district must have actual notice before it can be held liable in damages for intentional discrimination based on sex. *See Gebser,* 524 U.S. 274, 287-289, 118 S.Ct. 1989, 1998-1999, 141 L.Ed.2d 277 (reasoning that recovery based on principles of vicarious liability or constructive notice is at odds with express enforcement scheme requiring notice to an "appropriate person," and would "divert [ ] education funding from beneficial uses where a recipient was unaware of discrimination in its programs and is willing to institute prompt corrective measures").[7] Defendant DCSD contends that the school district did not have "actual notice" that Mency was sexually abusing students until September 1994. Plaintiffs argue that the school district had actual notice of Mency's misconduct as early as November 1993. Plaintiffs do not contest the district court's finding that Plaintiffs did not tell their parents, any teacher, or any other school district employee about Mency's conduct when it was occurring. Instead, Plaintiffs contend that DCSD knew or should have known that Mency was sexually abusing Plaintiffs because of a complaint lodged by a student who is not a party to this case.

In November 1993, another Knollwood student, Malissia Dan'Yell Burrell, was playing touch football during an after-school physical education class taught by Mency. In her deposition,[8] Burrell stated that she was playing center, and Mency quarterback. On one play, Burrell felt Mency "touch [her] behind" as she hiked the ball. Later, after the class had ended, Burrell was getting a drink from the water fountain when Mency "tried to touch" her inappropriately. The following day, Burrell and her guardian, Helen Davis, came to school to discuss Defendant Mency's actions with Duncan.[9] Burrell told Duncan that Mency had

---

[7]It is important to note that the Title IX standard does not affect an individual's right to recover against a school district as a matter of state law, or against the teacher in his individual capacity under state law. *See Gebser,* 524 U.S. at 292, 118 S.Ct. at 2000. In fact, Plaintiffs in the instant action succeeded in their action against Mency entitling them to $600,000 in damages.

[8]Due to a discrepancy between the parties as to the exact nature of Burrell's complaint, we have gone back to Burrell's deposition testimony in the record to determine precisely what Burrell told Duncan and other school personnel.

[9]Davis reportedly told Duncan that "Mency [had] been fondling with [her] daughter." However, even viewed in the light most favorable to the Plaintiffs, we find no legitimate basis for Davis' use of the word "fondling" after examining Burrell's version of the incident.

asked her to "come closer" toward Mency when hiking the football, and that, on the next play, Mency had touched her behind as she hiked the ball to him. She also told Duncan that Mency had tried to touch her at the water fountain after the game, but she moved out of the way. According to Burrell, Mency did not try to put his hand down her pants, and he did not actually make contact with her at the water fountain.

As in *Gebser,* we cannot say that Burrell's complaint was sufficient to alert DCSD to the possibility that Mency was sexually harassing Plaintiffs.[10] Burrell complained to Duncan about a slight touching during a touch football game in which she was playing center and Mency was playing quarterback. Afterwards, at the water fountain, Burrell thought that Mency was about to touch her, but she moved away. Although we can understand a parent's misgivings about a Coach playing quarterback with a female student playing center, Burrell did not suggest that it was inappropriate. We agree with the district court that a complaint of an incidental touching during an athletic event and a perceived imminent touching could not, as a matter of law, apprise Defendants to the possibility that Mency was sexually molesting Plaintiffs. Furthermore, even if such a complaint were sufficient to constitute actual notice, Defendants responded with anything but deliberate indifference.

### 3. Deliberate Indifference

After meeting with Burrell and Davis, Duncan contacted his supervisor, Area Director Dr. Roosevelt Daniels. On Daniel's instruction, Duncan directed the school counselor, Yvonne Butler, and the school social worker, Corrie Wingfield, to investigate Burrell's complaint. Butler and Wingfield interviewed Burrell and Pope, a student Burrell identified as having witnessed Mency touch Burrell. However, when Butler interviewed Pope, Pope denied seeing Mency touch Burrell. Pope did confirm that Mency slapped boys and girls at the after-school P.E. class as praise for making good plays. Based on her interviews, Butler concluded that Mency inadvertently touched Burrell during touch football and that Burrell perceived that Mency tried to touch her after the game at the water fountain.

Wingfield also interviewed Burrell and Pope individually. Unlike Butler, Wingfield did not know why she had been asked to interview the students. Neither student made any allegation of sexual or physical abuse, and Wingfield did not perceive that she was even investigating a complaint of sexual misconduct.

Duncan met with Mency to discuss the gravity of the situation. Mency denied doing anything

---

[10]Dr. Roosevelt Daniels, Duncan's supervisor, testified in his deposition that "nothing about sexual misconduct whatsoever" was ever communicated to him with regard to Burrell's complaint.

inappropriate, and stated that if he was patting the students on the back, of which he couldn't be sure, it was in the context of athletics. Duncan told Mency he disapproved of Mency's conduct and directed him to stop patting boys or girls on the back side.

At the conclusion of the investigation, Duncan arranged a meeting with Davis, Burrell, Butler, and Mency. Burrell recounted her allegations, but Mency denied any intent or attempt to touch Burrell. Duncan invited questions from Davis, but she didn't have any. After discussion, Duncan concluded that Mency might have touched Burrell inadvertently during the football game. However, Burrell could not state that it was sexual in nature. Moreover, both Burrell and Mency were in accord that no touching took place at the water fountain.

Even though the investigation failed to reveal reasonable evidence of inappropriate conduct by Mency, Duncan took immediate corrective action. With Davis' approval, Duncan removed Burrell from the after-school P.E. class with Mency. Duncan offered to remove Burrell from her regular P.E. class with Mency, but Burrell wanted to stay in the class. Burrell's mother similarly rejected Duncan's offer to transfer Burrell to another school. Duncan instructed Mency to avoid all contact with Burrell other than class. Duncan also forbade Mency from being alone with Burrell or any female student. Finally, Duncan informed Davis that she should contact Duncan's supervisor if Davis thought anything further should be done.

Duncan followed up with Burrell several times throughout the school year, but Burrell had no further complaints. Duncan also monitored Mency for any indiscretions, but he never observed Mency alone with female students. At least three other teachers also testified that they never saw Mency alone with female students, and they never witnessed him behave inappropriately around students.[11]

Plaintiffs contend that Duncan acted with deliberate indifference because Duncan did nothing to protect Plaintiffs in the face of actual knowledge that Mency engaged in acts of discrimination. Plaintiffs complain that Duncan neglected to interview any teachers or students about Mency's conduct. Plaintiffs also protest Duncan's failure to direct anyone to monitor Mency. Plaintiffs make the related argument that Duncan disregarded DeKalb County Schools policy[12] in the investigation of Burrell's complaint. In support of this

---

[11]The parties deposed these teachers during discovery of the present action.

[12]Specifically, Plaintiffs rely on "Investigation Guidelines" set forth in *Dealing With Allegations by Students or Parents of Misconduct by Staff Members* (approved Aug. 10, 1994). Although we address Plaintiffs' contentions, we question whether these guidelines were in effect when Burrell lodged her complaint in November of 1993.

argument, Plaintiffs point out that Duncan neglected to take a written statement from Burrell or Mency, that he failed to open a file on the complaint, and that he failed to conduct the school level investigation in cooperation with the school detective, as outlined in school policy. Although Duncan followed school policy in alerting the school counselor and social worker to the allegations, Plaintiffs complain that Duncan failed to provide a written summary of the interviews to Daniels, as required. In short, Plaintiffs maintain that if Duncan or Daniels had followed school district policy, the school would have eradicated Mency's abuse of Plaintiffs.

We cannot find merit in Plaintiffs' speculation. There is simply no reasonable basis to believe that the failure to obtain written statements or to record the meetings led to a failure to uncover relevant evidence or caused the investigation to be any less thorough. We are similarly unpersuaded that Burrell or Mency would have responded differently to questioning had they been asked to provide a written statement. We reiterate that there is simply no evidence that DCSD had "actual notice" of Mency's misconduct until one of the Plaintiffs was confronted by the school detective in September 1994. It is undisputed that Mency's sexual abuse of the Plaintiffs occurred in secret, where no one could observe what he was doing. We also disagree with Plaintiffs' characterization of Duncan's response to Burrell's complaint. Even if Duncan, in response to Burrell's complaint, had interviewed teachers and asked them to monitor Mency, there is no evidence they would have observed Mency involved in inappropriate behavior. In fact, teachers deposed during the instant litigation did not observe Mency engage in any inappropriate conduct around his students during the 1993-94 school year. Furthermore, they testified that they would have reported it if they had.

Even drawing all reasonable inferences in favor of Plaintiffs,[13] we must agree with the district court that Plaintiffs have failed to create a genuine issue of material fact that Duncan acted with deliberate indifference. Duncan contacted his supervisor, and directed the school counselor and school social worker to interview Burrell and Pope, the witness identified by Burrell. Duncan interviewed Mency. Duncan then

---

[13]We would be remiss to overlook the district court's error in commenting on one of the Plaintiff's sexual history. Pursuant to Fed.R.Evid., Rule 412(b)(2), evidence offered to prove the sexual behavior or sexual predisposition of an alleged victim is admissible if otherwise admissible and its probative value *substantially outweighs* the danger of unfair prejudice to any party. We believe the prejudice to Plaintiffs substantially outweighed any probative value this evidence could possibly have had, and thus, should not have been considered by the court on a motion for summary judgment. The district court's error in addressing this evidence is even more serious in this case because Plaintiff was a minor. Thus, Plaintiff could not consent to Mency's sexual abuse because she did not possess the legal capacity to consent. Nevertheless, we do not find that this error requires reversal because no reasonable juror could find that DCSD, through Duncan, acted with deliberate indifference to Burrell's complaint.

met with Davis, Burrell, Mency and Butler.[14] Although he concluded that nothing of a sexual or inappropriate nature had taken place, Duncan instituted corrective measures. He removed Burrell from after-school P.E., and offered to remove her from regular P.E. Duncan ordered Mency to stay away from Burrell and not to be alone with female students. Duncan called Daniels who suggested offering Burrell an administrative transfer. Duncan followed up with Burrell several times over the course of the school year, and monitored Mency closely. Although ultimately ineffective in preventing Mency from discriminating against Plaintiffs, the relevant question is whether Duncan's actions amounted to deliberate indifference. *Cf. Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 456 n. 12 (5th Cir.) (en banc) (applying deliberate indifference standard for purposes of § 1983 analysis and recognizing that many good faith but ineffective responses may satisfy a school official's obligations), *cert. denied sub nom. Lankford v. Doe,* 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994). We hold, as a matter of law, that they did not. *See Gebser,* 524 U.S. at 291, 118 S.Ct. 1989 (equating deliberate indifference to "an official decision not to remedy the violation"). Thus, the district court correctly granted summary judgment in favor of DCSD on Plaintiffs' Title IX claim.

B.      Section 1983

Plaintiffs claim that the district court erred by granting summary judgment and finding DCSD and Duncan not liable under section 1983 for Mency's misconduct. A plaintiff seeking to impose liability on a municipality (school district) under section 1983 must identify a municipal "policy" or "custom" that caused a deprivation of federal rights. *Board of County Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997).[15] But it is well established that a municipality may not be held liable under section 1983 on a theory of respondeat superior. *See Monell v. Dept. of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). Moreover, it is not enough to identify conduct properly attributable to the municipality. A plaintiff must

_____

[14]Although one could argue that this approach was not wise, that is not the question before us.

[15]Locating a policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to represent official policy. Similarly, an act performed pursuant to a custom that has not been formally approved by an appropriate decision-maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. *Brown,* 520 U.S. at 403-04, 117 S.Ct. 1382.

show that the municipal action was taken with the requisite degree of culpability, i.e., that the municipal action was taken with " 'deliberate indifference' " to its known or obvious consequences. *Brown,* 520 U.S. at 407, 117 S.Ct. at 1390 (*quoting City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)).

In essence, Plaintiffs claim that the Defendants failed to protect Plaintiffs from Mency.[16] In granting summary judgment, the district court concluded that the Plaintiffs had failed to produce sufficient evidence to satisfy the requirement that DCSD or Duncan knew of Mency's conduct or were deliberately indifferent to evidence that should have put them on notice. Thus, the only issue before us is whether Plaintiffs created a triable issue that Defendants possessed the requisite notice to establish institutional liability under section 1983.

The district court correctly held that the deliberate indifference standard applies to section 1983 claims basing liability on a municipality's actions in failing to prevent a deprivation of federal rights. *See Gebser,* 524 U.S. at 291, 118 S.Ct. at 1999 (*citing Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). As stated at length in our discussion of Plaintiffs' Title IX claim, the record contains no evidence that the Defendants knew that Mency was sexually harassing Plaintiffs, or that Defendants were deliberately indifferent to information that should have put them on notice.

III.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[16]Plaintiffs asserted three theories of recovery:  (1) violation of DCSD policy;  (2) failure to investigate, train and report;  and (3) a custom of inaction.