[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 13, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15928
Non-Argument Calendar

_____

D. C. Docket No. 06-00193-CV-WCO-2

JOHN W. TRAMMELL,

Plaintiff-Appellant,

versus

TED PAXTON,
In his official capacity as Sheriff
of Forsyth County, Georgia,
SEBASTIAN D. STRANO,
JOHN DOE,
ALLISON MILFORD,
DR. LINWOOD ZOLLER, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 13, 2009)

Before BLACK, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Appellant John W. Trammel ("Appellant") appeals the district court's Order granting summary judgment in favor of all of the Appellees. By way of 28 U.S.C. § 1983, the Appellant brought a Fourteenth Amendment deliberate indifference claim against various members of the Forsyth County Sheriff's Department including the Sheriff in his official capacity, arising from the Appellant's arrest for aggravated assault and the medical care he received while incarcerated immediately thereafter. Finding no error, we affirm.

## I.

On May 20, 2006, Appellee Sebastian Strano, a deputy in the Forsyth County Sheriff's Office, arrested the Appellant for aggravated assault following an encounter between the Appellant and Reginald Witalis, during which the Appellant pointed a shotgun at Witalis.[1] After the incident, the Appellant returned to his vehicle and drove away. As Witalis returned to his bicycle, he saw Appellee Strano's patrol car and reported the incident. Appellee Strano pulled over the

---

[1] The district court did not provide details as to the "traffic accident" that led to the encounter between the Appellant and Witalis. The Appellant asserts that no "traffic accident" occurred; rather, according to the Appellant, "[w]hen [he] tried to pass [Witalis], he thought that he may have forced Witalis off the road, so he stopped to make sure that he had not hit him." Br. of Appellant at 2. This is of no matter, as any factual discrepancy with respect to the "accident" that led to the encounter between the Appellant and Witalis is not relevant here.

Appellant and, after conducing an investigation and finding a shotgun in his vehicle, arrested him.

Following his arrest and while seated in the back of Appellee Strano's patrol car, the Appellant complained of being uncomfortable and advised Appellee Strano that he believed he was having a stroke. Believing that the Appellant's condition did not warrant emergency care, Appellee Strano drove the Appellant to the Forsyth County Detention Center. There, Appellee Strano turned the Appellant over to the detention officers and informed them of his medical complaints. Appellee Benjamin Smith was assigned to the intake desk. As part of the booking procedure, the Appellant completed a "Pre-Booking Medical Form." Appellee Devon Gore, another booking officer, reviewed the form with the Appellant. Appellee Smith requested that Appellee Rodney Pirkle, another deputy who had Emergency Medical Technician training, examine the Appellant. Appellee Pirkle determined that the Appellant had elevated blood pressure, but that he did not need emergency medical treatment.

After being photographed and fingerprinted, the jail staff contacted Appellee Allison Milford, a registered nurse on duty in the medical section of the jail.[2]

---

[2] Appellee Southeastern Service Group ("Southeastern") provided medical services to the Forsyth County Detention Center pursuant to a contract with the Georgia Department of Corrections.

Appellee Milford examined the Appellant and found that he had an elevated blood pressure. Pursuant to a standing order of the jail medical director, Appellee Linwood W. Zoller, III, M.D., Appellee Milford offered the Appellant medication to treat his high blood pressure. The Appellant refused. Appellee Milford telephoned the Appellant's personal physician and allowed the Appellant to speak with his physician. After the conversation, the Appellant still refused to take the medication. Appellee Milford telephoned Appellee Zoller, who also advised the Appellant to take the medication. The Appellant again refused, and instead demanded that either Dr. Zoller travel to the jail and examine him or that he be taken to a hospital. Appellee Milford asked the Appellant to sign a refusal of medical care form, but the Appellant refused to do so. The jail staff escorted the Appellant back to a holding cell.

Approximately five hours after booking, the Appellant was released on bond. Upon release, the Appellant's wife met him and called an ambulance. The Appellant was airlifted to Grady Healthcare Systems. The Appellant spent about four hours in the emergency room. The Appellant received no medication to alleviate his high blood pressure and the treating physicians found no signs that the Appellant suffered a stroke or transient ischemic attack. The treating physicians determined that his symptoms were most likely psychological, not physical.

4

## II.

"We review *de novo* the district court's grant of a motion for summary judgment," viewing all evidence and factual inferences in the light most favorable to the nonmoving party. *See Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994) (citation omitted).

## III.

The Appellant asserts that the district court erred by (1) denying his motion for partial summary judgment against Appellee Strano with regard to his Fourth Amendment false arrest claim, and (2) granting summary judgment in favor of all the Appellees with regard to his Fourteenth Amendment deliberate indifference claim. We will address each claim in turn.

## A.

The Appellant argues that the district court erred by denying his motion for partial summary judgment as to his Fourth Amendment false arrest claim and his Fourteenth Amendment deliberate indifference claim against Appellee Strano, the arresting officer.[3]

---

[3] Here, the Appellant represents that he moved for partial summary judgment against Appellee Strano as to both the Fourth Amendment claim and the Fourteenth Amendment claim. *See* Br. of Appellant at 17. Thereafter however, the Appellant fails to provide any argument addressing the Fourteenth Amendment claim as to Appellee Strano. Rather, the only claim addressed by the Appellant as to Appellee Strano on appeal is the Fourth Amendment claim. Therefore, the Appellant has waived any other claim against Appellee Strano, including any Fourteenth Amendment claim. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324,

As to the Fourth Amendment claim, the Appellant anticipates Appellee Strano's counter argument, asserting that he properly raised a Fourth Amendment claim in his original "Complaint for Violation of Civil Rights," filed on September 15, 2006. The Appellant nonetheless notes that the district court failed to address the Fourth Amendment claim in its September 29, 2008 Order granting summary judgment. In response, Appellee Strano argues that the Appellant did not plead a Fourth Amendment claim against him.

Our review of the original Complaint reveals that the Appellant did not plead a claim for a violation of his Fourth Amendment rights based on false arrest. In fact, the Complaint delineates explicitly only three counts: (1) "intentional infliction of cruel and unusual punishment on a pre-trial detainee;" (2) "conscious indifference to serious medical needs of pre-trial detainee;" and (3) a failure to supervise and train against the Sheriff of Forsyth County.[4] The Complaint makes passing references to the Fourth Amendment in the context of other counts; however, such reference does not meet the pleading requirements for a separate and independent claim for false arrest pursuant to the Fourth Amendment.

---

1330 (11th Cir. 2004) (providing that "the law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed").

[4] The Appellant filed a "First Amended Complaint for Violation of Civil Rights" on or about March 15, 2007. However, that First Amended Complaint contained the same three counts as his original Complaint.

Furthermore, the district court declined to consider a Fourth Amendment claim against Appellee Strano because it denied the Appellant's motion to amend (in relevant part) and, therefore, there was no Fourth Amendment claim properly before it. *See Trammell v. Paxton*, Civil Action File No. 2:06-CV-193, slip op. at 22 n.20 (N.D. Ga. Sept. 29, 2008). The Appellant does not challenge the district court's decision to deny the motion to amend. As such, we decline to consider the substance of the Appellant's Fourth Amendment claim for the first time on appeal. *See Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 806 (11th Cir. 1991).

**B.**

The Appellant argues that the district court erred in granting summary judgment in favor of all of the Appellees as to his Fourteenth Amendment deliberate indifference claim.

*1.     Appellee Paxton*

The Appellant asserts that Appellee Paxton as the Sheriff of Forsyth County (1) instituted a policy of understaffing at the Forsyth County Detention Center, and (2) failed to train his employees there.[5]

---

[5] The Appellant sued Appellee Paxton in his official capacity only, which is the functional equivalent of suing Forsyth County. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (per curiam).

"[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Furthermore, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id*. at 385.

First, as to the "understaffing" claim, the Appellant has failed to establish that a custom or policy existed in Forsyth County with respect to "understaffing" at the Forsyth County Detention Center. Even if the Appellant had established such a custom or policy of "understaffing," Forsyth County's action must have been "taken with the requisite degree of culpability . . . with deliberate indifference to its known or obvious consequences." *McDowell*, 392 F.3d at 1291 (quoting *Davis ex rel. Doe v. Dekalb County Sch. Dist.*, 233 F.3d 1367, 1375-76 (11th Cir. 2000)). The Appellant has not met this burden.

Second, as to the failure-to-train claim, the Supreme Court has recognized that inadequate training may impose § 1983 liability on a municipality in "limited circumstances." *Canton*, 489 U.S. at 387. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts

8

to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388; *see also Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (providing that a plaintiff asserting a § 1983 failure-to-train claim must present "some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action"). The Appellant has presented no evidence that Forsyth County "knew of a need to train and/or supervise" its employees at the Forsyth County Detention Center on how to handle pre-trial detainees who exhibit symptoms of high blood pressure but refuse medical treatment. "This Court repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Id.* at 1351. Again, we find that the Appellant has not met his burden.[6]

2.      *Appellees Chad Evers, Jason Burndett,[7] Gore, Pirkle, and Smith*

To prevail on his Fourteenth Amendment claim, "Plaintiff must prove both an objectively serious medical need and that a Defendant acted with deliberate indifference to that need." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir.

---

[6] For the same reasons that the Appellant's claims fail against Appellee Paxton, we find that they also fail against Appellee Southeastern.

[7] According to the district court, Appellee Burndett was the "watch commander" on duty, *Trammell*, slip op. at 7 n.13, and Appellee Evers monitored the Appellant while he was in the holding cell, *id.* at 31.

2008).  As to the objective prong, a "serious medical need" is "one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Id.* (citing *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).  As to the subjective prong, "[t]o establish deliberate indifference, Plaintiff must show that a Defendant had (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Id.* (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (quotation marks omitted)).[8]

The Appellant presents no evidence to satisfy the subjective prong as to Appellees Evers, Burndett, Gore, Pirkle, and Smith, individually.  Rather, without providing any specifics or citing to any evidence, the Appellant contends that they collectively knew of a serious risk of harm and disregarded that risk.  However, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Burnette*, 533 F.3d at 1331; *see id.* ("Each individual Defendant must be judged separately and on the basis of what that person knows.").  Because the Appellant presents no evidence as to the Appellees individual subjective knowledge, he has failed to carry his burden.  Moreover, because the Appellees provided the Appellant with medical care in the form of

---

[8] Because the Appellant's fails as to the subjective prong, we express no opinion as to the objective prong.

10

several examinations as well as medication, which he refused, the conduct of the Appellees falls far short of gross negligence.[9]

3.    *Appellees Zoller and Milford*

Similar to the Appellant's Fourteenth Amendment claim against the other individual Appellees, the Appellant has failed to present evidence to meet the subjective prong as to Appellees Zoller and Milford. *See Burnette*, 533 F.3d at 1330. The Appellant provides no evidence to establish that either Appellee Zoller or Milford possessed the required "subjective knowledge" of a risk of serious harm. In addition, their conduct does not meet the onerous "more than [gross] negligence" standard. *Id.* Appellee Milford examined the Appellant, determined that he had high blood pressure, and repeatedly offered him medication but to no avail. Appellee Zoller spoke with Appellee Milford and the Appellant regarding his symptoms, and, based thereon, Appellee Zoller determined that the Appellant did not require emergency care but advised him to take the medication. We agree with the district court that Appellee Milford's and Zoller's conduct amounts to

---

[9] Even if we were to find the individual Appellees' conduct constitutionally impermissible, we would nonetheless conclude that they are shielded from civil liability under the second step of the qualified immunity analysis because their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). The Appellant directs us to no case law to the contrary.

11

nothing more than "mere negligence" and therefore does not rise to the level of deliberate indifference.

Essentially, the Appellant asserts that Appellees Milford and Zoller should have done more to alleviate his symptoms. It is well-settled, however, that "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."[10] *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).

**IV.**

Because we find no error in the district court's decision to deny the Appellant's partial motion for summary judgment and to grant the Appellees' motion for summary judgment, we affirm.

AFFIRMED.

---

[10] *See Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007) (providing that "the standards under the Fourteenth Amendment are identical to those under the Eighth").