[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12974

_____

D.C. Docket No. 6:13-cv-01425-PGB-KRS


RUTH DENHAM,
as Personal Representative of the Estate of Tracy Lee Veira, Deceased,

Plaintiff-Appellant,

versus

CORIZON HEALTH, INC.,
a Delaware corporation,
VOLUSIA COUNTY, FLORIDA,
a political subdivision of the State of Florida,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 13, 2017)

Before WILLIAM PRYOR and ROSENBAUM, Circuit Judges, and
MARTINEZ,[*] District Judge.

_____

[*] Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida, sitting by designation.

PER CURIAM:

This appeal requires us to decide whether a county and the healthcare provider at its jail are liable for the death of pretrial detainee Tracy Lee Veira, 42 U.S.C. § 1983, where the record does not establish a pattern of similar incidents at the jail, knowledge by county policymakers of the practice that the plaintiff alleges violated the detainee's constitutional rights, or a causal link between any custom of the healthcare provider and the detainee's death. Three days after Veira turned herself in at the Volusia County jail, the medical staff at the jail, furnished by Corizon Health, Inc., diagnosed her as suffering from opiate withdrawal. The medical staff devised a treatment plan for Veira that required officers, not medical personnel, to observe her every fifteen minutes. Officers found her dead in her cell three-and-a-half days later. The personal representative of Veira's estate, Ruth Denham, sued Volusia County and Corizon for violating Veira's rights under the Fourteenth Amendment by acting with deliberate indifference to Veira's serious medical needs, *id.* § 1983. Volusia County and Corizon moved for summary judgment on the ground that Denham failed to establish facts that proved that either entity had a custom or policy of deliberate indifference to Veira's serious medical needs. The district court granted the motions.  After reviewing the record and the parties' briefs, and hearing oral argument, we agree that Volusia County and Corizon are entitled to summary judgment. Because Denham has failed to

establish a genuine issue of material fact regarding whether either entity had a custom or policy of deliberate indifference that caused Veira's death, we affirm the decision of the district court.

## I. BACKGROUND

The facts of this case are undeniably tragic. On September 9, 2009, Veira turned herself in at the Volusia County Jail, after she violated her probation for convictions of driving with a canceled, suspended, or revoked license and fleeing law enforcement officers. Corizon was the contract healthcare provider at the jail. Before her imprisonment, Veira was prescribed Oxycodone and Xanax by her physician to treat symptoms of chronic back pain. These prescribed medications were discontinued after Veira's booking because Oxycodone and Xanax may not be distributed to inmates.

Three days after she entered the jail, Veira went to the medical clinic and expressed that she had been vomiting in her cell. A nurse identified signs of opiate withdrawal and called the nurse practitioner. Without examining Veira, a doctor gave "Physician's Orders" over the phone that prescribed various medications and instructed that Veira be placed on a clear liquid diet for three days. The medical staff also began a medical protocol to monitor Veira's withdrawal symptoms and moved Veira from the general prison population to medical segregation, where she was placed on medical watch. Jail policy required that corrections officers observe

3

an inmate on medical watch "in time intervals not to exceed every 15 minutes and document[ ] as such" on a watch sheet.

In the "early afternoon" on September 14, two days after Veira was placed on the medical protocol, she called her friend Crystal Wharton. She told Wharton that she felt sicker than ever before and had submitted multiple requests for mental health services but that no nurse had come to see her. Veira asked Wharton to call the medical clinic for her, which Wharton did. The medical staff saw Veira at 3:45 p.m. that day.

Veira went to the nurses' station again the next day, September 15, at around 2:30 p.m. According to one nurse, Nurse Jones, Veira "was slumped over lying across 3 chairs, lethargic, diaphoretic, with pale skin, arms and legs twitching, [and] exhibiting slurred speech." Jones was concerned. She informed the head nurse that Veira needed immediate medical attention and looked like she needed to go to the hospital. But thirty minutes later, when Jones returned to the nurses' station, Veira was in the same condition. The head nurse told Jones that she had not seen Veira "and that the other [nurse] could see [Veira] when she was done with what she was doing." When the other nurse examined Veira, she discovered that Veira had lost so much weight since she entered the jail that the blood pressure cuff would not fit. The other nurse later told Jones that the head nurse had said Veira was "just DT'ing, [was] already on MLD and medication," and just needed

4

water.[1] A member of the medical staff wrote in Veira's medical record that, at this time, Veira was suffering from mild withdrawal.

That night, Veira "moaned and cried out loudly in pain . . . , asking for help," but the guards ignored her pleas and "talk[ed] among themselves in a negative fashion about 'people comin' in here on drugs." The watch sheet for that evening and the following morning did not "show[ ] any hint of [a] problem." But at 9:45 a.m., an officer found Veira unconscious in her cell. Veira was "in full rigor mortis and with moderate liver mortis." Her body was covered in "a dark green bilious vomit," and a "cup next to her head was filled to the brim with the same fluid." According to the watch sheet for that time period, Veira had been observed every fifteen minutes. The majority of the notations stated that Veira was observed lying on her bunk breathing, and none of them marked anything out of the ordinary.

Two officers admitted that they made incorrect entries on the watch sheet in the hour or two before Veira's death. One of the officers stated that she wrote "on bunk breathing" on the watch sheet incorrectly for the 8:45 a.m. and 9:00 a.m. entries. The officer said that she actually saw Veira sitting on the toilet at 8:45 a.m. and standing at her cell door at 9:00 a.m. The other officer, a sergeant, wrote on the watch sheet that she spoke with Veira at 8:33 a.m., but later stated that she did not

---

[1] The abbreviations are not defined in the record or by the parties.

5

speak with her and instead saw her on her bed, apparently sleeping. One of

Denham's medical experts disputed these statements. He stated that "purported

observations of . . . Veira by [ ] staff that she was standing at her door less than an

hour before she was found unresponsive, or sitting on the toilet just over an hour

before she was found, are preposterous" because, based on the condition of the

body when it was found, Veira had likely been dead for at least one to two hours

before she was found at 9:54 a.m.

Additionally, the officers often recorded watches that never occurred, and

the supervisors would help the officers falsify the sheets. According to Dr. Marilyn

Ford, the Corrections Director for the Volusia County Division of Corrections,

employee records from 2005 through the date of Veira's death in 2009 reveal that,

excluding the reprimands associated with Veira's death, there were "eight other

instances where corrections officers either failed to properly maintain watch over

inmates or failed to properly document their activities." Dr. Ford explained that

"[i]n every case, employees were disciplined."

At the autopsy, the medical examiner discovered that Veira had lost at least

19 pounds over the six-and-a-half days she was imprisoned. He listed "withdrawal

from opiate abuse" as a significant condition of Veira's cause of death. Dr. Kris

Sperry, one of Denham's medical experts, stated that, in his opinion, "Veira died of

the complications of severe vomiting and dehydration which caused her to vomit,

aspirate that vomit, develop aspiration pneumonia, and die." Dr. Sperry stated that Veira likely would have survived had she been transferred to a medical facility "at least on the evening before she was found deceased."

An inmate was discovered dead at the jail at least one other time. A former officer reported that he "recall[ed] one instance prior to but similar to the Veira case in which [he] and [another officer] were the first to respond to an inmate classified close watch and housed in the former medical clinic who had been dead so long when [they] discovered him that he [was] fully rigid and his bodily fluids were soaking through the tissue of his back into the mattress."

Denham, as personal representative for Veira's estate, filed a complaint against Volusia County and Corizon, alleging that Volusia County and Corizon violated Veira's Fourteenth Amendment rights by acting with deliberate indifference to Veira's serious medical needs, 42 U.S.C. § 1983. Volusia County and Corizon filed motions for summary judgment, which the district court granted. Specifically, the district court determined that Denham failed to produce evidence that "Volusia County's policymakers or the policymakers in its department of corrections had actual or constructive knowledge of the constitutionally-violative practice" and determined that Denham failed to prove deliberate indifference under a theory of liability for failure to train because she did not establish a widespread pattern of similar constitutional violations by untrained employees or establish that

the need for more or different training was "obvious." The district court also determined that, although a rational jury could determine that Corizon had a custom of failing to complete intake paperwork accurately, Denham failed "to produce affirmative evidence showing a direct causal link between this custom and Veira's death." And to the extent any of Denham's arguments could be construed as an allegation of a custom of providing inadequate medical care, the district court stated that the record refuted this assertion by proving that Corizon's staff interacted with Veira multiple times every day. Finally, to the extent Denham alleged in her complaint that Veira's death may have been caused by a policy or custom of understaffing the jail, the district court determined that Denham failed to produce any evidence of understaffing and instead relied on conclusory allusions to that effect.

## II. STANDARD OF REVIEW

"This Court reviews *de novo* summary judgment rulings and draws all inferences and reviews all evidence in the light most favorable to the non-moving party." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2001).  "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Craig v. Floyd Cty.*, 643 F.3d 1306, 1309 (11th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). If the moving party is able to successfully meet this initial burden, the

8

burden then shifts to the plaintiff to provide evidence showing that a genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 (1986). However, the plaintiff must do more than simply cast a metaphysical doubt regarding material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

Moreover, if the nonmoving party fails to make a sufficient showing to establish the existence of an essential element to that party's case, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Craig*, 643 F.3d. at 1309 (quoting *Celotex Corp.*, 477 U.S. at 322–23).

### III. DISCUSSION

Section 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 132 S. Ct. 1497, 1501 (2012). Under the statute, "'[e]very person' who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages." *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). "Local governing bodies" are

9

"persons" for purposes of section 1983 and "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy . . . officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). And "although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution," municipalities also "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval." *Id.* at 690–91. A private entity, like Corizon, is subject to liability under section 1983 when it "performs a function traditionally within the exclusive prerogative of the state," such as contracting with the county to provide medical services to inmates because it becomes "the functional equivalent of the municipality" under section 1983 when it performs such a function. *Craig*, 643 F.3d at 1310 (alterations and quotation marks omitted). To survive summary judgment, the record must contain sufficient evidence to create a genuine dispute of material fact on each of the three elements of liability under section 1983. *See id.* at 1309–10.

First, Denham must establish that Veira's constitutional rights were violated. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Denham contends that Volusia County and Corizon deprived Veira of her right to due process under the

10

Fourteenth Amendment. As a pretrial detainee, Veira's "rights exist[ed] under the due process clause of the Fourteenth Amendment rather than the Eighth Amendment," but Denham's "claims are subject to the same scrutiny as if they had been brought as deliberate indifference claims under the Eighth Amendment." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009). To establish that Veira's constitutional rights were violated, or in other words, to prevail on a claim of deliberate indifference to a serious medical need, Denham must show (1) a serious medical need, (2) the Defendants' deliberate indifference to that need, and (3) causation between that indifference and Veira's injury. *Craig*, 643 F.3d at 1310.

Second, Denham must show "that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right." *McDowell*, 392 at 1289.  A county is not liable under section 1983 for injuries caused solely by its employees, *McDowell*, 392 F.3d at 1289, and may be held liable only when the execution of a government policy or custom causes the injury. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). There are at least five ways to prove a municipal policy or custom, Erwin Chemerinsky, *Federal Jurisdiction* 511 (5th ed. 2007), but only two are relevant to this appeal. A municipality may be liable under section 1983 for violations of constitutional rights caused by a policy of failing to train its municipal employees, *Canton*, 489 U.S. at 380, and "an act performed pursuant to

11

a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).

Third, Denham must establish "that the policy or custom caused the violation." *McDowell*, 392 F.3d at 1289.  In sum, to survive summary judgment, Denham must produce evidence sufficient to create a genuine dispute of material fact on each element of liability under section 1983: "(1) that [Veira's] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Id.*

Denham asserts five theories of liability, and each of these theories fails. First, she argues that Volusia County and Corizon had policies of failing to train the guards at the Volusia County jail, but she fails to present evidence that proves that the entities had this policy. This argument fails on the second factor. Second, she argues that Volusia County had a custom of falsifying records to cover up the officer's failure to perform watches every fifteen minutes as required, but she fails to establish that any policymaker at Volusia County knew about this practice. This argument also fails on the second factor. Third, she argues that Corizon had a custom of failing to perform the intake procedures correctly, but she does not

12

explain how this custom caused Veira's death. This argument fails on the third factor. Fourth, Denham argues that Corizon had a custom of providing inadequate medical care, but, at most, she submitted evidence suggesting that Corizon provided inadequate medical care on only a single prior occasion. This argument fails on the second factor.  Fifth, Denham argues that Volusia County had a policy or custom of understaffing, but she fails to establish that a policymaker's budget decision was highly likely to cause Veira's death. This argument fails on the third factor.

   A.  *Denham Did Not Produce Sufficient Evidence to Establish that Volusia*
       *County and Corizon Had Policies of Failing to Train the Officers at the Jail.*

   Denham argues that corrections officers in the medical segregation unit at the jail "performed critical medical duties with respect to [the] most seriously ill inmates" but were not trained to provide nonemergency medical services. She asserts that this failure to train constitutes a custom or policy of deliberate indifference. A municipality may be liable for failing to train its employees if "such inadequate training can justifiably be said to represent 'city policy.'" *Canton*, 489 U.S. at 390. "Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, . . . a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants." *Gold v. City*

*of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). The failure to train must "reflect[] a 'deliberate' or 'conscious' choice by a municipality." *Canton*, 489 U.S. at 389. "To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350.

A municipality might be on notice of a need to train or supervise in a particular area if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" or if the employees of the municipality "in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers." *Canton*, 489 U.S. at 390 & n.10. Denham argues that Volusia County and Corizon failed to provide the correctional officers at the jail with medical training, despite using the officers to perform "critical medical duties," and that this need to train was obvious. This argument fails.

Denham failed to produce sufficient evidence to prove that it was obvious that the correctional officers at the Volusia County jail needed "more or different" training. This standard is difficult to meet. The Supreme Court has never

14

determined that the need for "more or different" training was obvious. It has "given only a hypothetical example of a need to train being 'so obvious' without prior constitutional violations: the use of deadly force where firearms are provided to police officers." *Gold*, 151 F.3d at 1352 (citing *Canton*, 489 U.S. at 390 n.10). The facts in this appeal are not analogous to this hypothetical. Denham contends that it was obvious that the officers at the jail needed medical training because Volusia County and Corizon used the officers "to perform critical medical duties." But the record does not establish that the officers performed "critical medical duties," let alone medical duties. In fact, the officers *were not permitted* to perform the functions of medical staff, except in emergency situations, for which the officers were provided emergency medical training. To whatever extent the officers needed training to deal with "split-second decisions with life-or-death consequences[,]" like armed police contemplating the use of deadly force, *Connick v. Thompson*, 563 U.S. 51, 64 (2011), that training was provided by virtue of the emergency medical training.

Because Denham failed to identify a pattern of similar constitutional violations, she also has not established that the Volusia County officers so often violate constitutional rights that the need for further non-emergency medical-services training must have been plainly obvious to the Volusia County policymakers. *See Connick*, 563 U.S. at 62. She cites two incidents—the incident

15

involving Veira and one previous incident where an officer found a dead body. But even assuming that this prior incident constitutes a "similar constitutional violation," we have declined to hold a supervisor liable for failure to train where the plaintiff provided evidence of a prior, similar incident with facts similar to the plaintiff's. *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1053 (11th Cir. 2014). We determined that the one prior "incident did not provide the requisite notice to [the supervisor] that the training provided to detention officers was constitutionally deficient." *Id.* Likewise, ten complaints filed against one officer did not establish that city officials were aware of past police misconduct because there was no evidence that the past complaints had merit. *Brooks v. Scheib,* 813 F.2d 1191, 1193 (11th Cir. 1987). In contrast, we held a city liable where "[t]he evidence revealed *several* incidents involving the use of unreasonable and excessive force by police officers" that established that the "city had knowledge of improper police conduct, but failed to take proper remedial action." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) (emphasis added). Denham has produced only two incidents. These incidents do not establish sufficient evidence for a jury to find a pattern of constitutional violations supporting Denham's theory of liability for failure to train on non-emergency medical services.

16

B. *Denham Did Not Produce Sufficient Evidence to Establish that Volusia County or Corizon Had a Custom that Caused Veira's Death.*

Denham also argues that Volusia County and Corizon had customs that constitute policies of deliberate indifference. "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown*, 520 U.S. at 404. "But it is well established that a municipality may not be held liable under section 1983 on a theory of respondeat superior." *Davis ex rel. Doe v. DeKalb Cty. Sch. Dist.*, 233 F.3d 1367, 1375 (11th Cir. 2000). "Instead, 'recovery from a municipality is limited to acts that are, properly speaking, acts of the municipality—that is, acts which the municipality has officially sanctioned or ordered.'" *Id.* (quotation marks omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)). In addition to identifying "conduct properly attributable to the municipality," Denham must "show that the municipal action was taken with the requisite degree of culpability," that is, "with 'deliberate indifference' to its known or obvious consequences." *Id.* at 1375–76 (quoting *Brown*, 520 U.S. at 407).

Denham argues that Volusia County had a custom of recording watches that were not performed, but fails to produce evidence that this conduct is properly attributable to the municipality. Denham cites the affidavit of a former officer that

17

states that the practice of failing to perform watches and falsifying the watch sheets was "so pervasive" that he "personally [found] it inconceivable that they were not known to the top administrators." But a municipality may not be held liable for the acts of its employees unless the municipality sanctioned or ordered the acts. And the record establishes that to the knowledge of Dr. Ford, a policymaker for Volusia County, whenever an officer failed to perform a watch or falsified a record, the officer was disciplined. On this record, there is no evidence that the county in any way sanctioned the behavior of the officers who violated the watch policy because to the extent the policymakers knew about this practice, the policymakers thought the officers were punished. The record establishes that officers routinely falsified records and the supervisors assisted in this practice, but does not establish that any policymaker knew about this practice and did nothing. As such, Denham has failed to establish a custom that is properly attributable to the municipality.

Denham also argues that Corizon had a custom of failing to perform intakes correctly and that this failure prevented Corizon from diagnosing Veira for three days, but Denham has not established that this practice caused Veira's death. The medical staff diagnosed Veira as suffering from opiate withdrawal and placed her on a treatment protocol three days after she entered the jail. But nothing in the record suggests that Veira died because of Corizon's failure to diagnose Veira sooner. Even assuming that the failure to diagnose Veira earlier violated Veira's

18

rights and satisfies the standard for a policy of deliberate indifference, Denham failed to establish that this policy caused Veira's death.

And to the extent Denham argues that Corizon had a custom of providing inadequate medical care, she failed to establish that Corizon provided inadequate medical care to other inmates. Denham established that, on one other occasion, an inmate on medical watch was found dead and had been dead for a long time. But she produces no evidence tying this death to any action of Corizon. Her claim that Corizon had a custom of providing inadequate medical care rests only on Veira's experiences, which are, at most, proof of "'a single incident of unconstitutional activity.'" *Craig*, 643 F.3d at 1312 (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)). "That proof is 'not sufficient to impose liability' under section 1983.'" *Id.* (quoting *Tuttle*, 471 U.S. at 824). Assuming that "providing inadequate medical care" could be a custom and assuming that the medical care provided to Denham was inadequate, Denham failed to present evidence of other incidents that prove that Corizon had a custom of providing inadequate medical care.

Finally, Denham also seeks to hold Volusia County liable for Veira's death based on an alleged policy or custom of understaffing at the jail. She relies on the declarations of two former Volusia County correctional officers and a licensed practical nurse at the jail to support her assertion. These declarations, however, are insufficient to establish Volusia County's liability in this case. To survive

19

summary judgment, Denham must produce sufficient evidence that a policymaker's specific budget decision was highly likely, and not simply more likely, to inflict a particular injury. *See Brown*, 392 F.3d at 1292 (providing that in order to prevent municipal liability for a decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged). As we stated in *McDowell*, to test such a link, we look to whether a complete review of the budget decision and the resulting understaffed jail reveal that the policymaker should have known that Veira's death was a "plainly obvious consequence" of that decision. *Id.* "The County's liability cannot be dependent on the scant likelihood that its budget decisions would trickle down the administrative facets and deprive a person" of her constitutional rights. *Id.* While the declarations mentioned above may support Denham's contention that the jail was understaffed, Denham has failed to present sufficient evidence that a policymaker's specific budget decision was highly likely to cause, or the "moving force" behind, Veira's death. *Id.* at 1293. Although Veira's death was a tragic occurrence, the fact that the County's "budget practices resulted in understaffing does not amount to a purposeful disregard which would violate any citizen's constitutional rights." *Id.*

The standard for holding a municipality liable under section 1983 is high. A plaintiff must prove that a federal right was violated, that the municipality had a

policy of deliberate indifference, and that this policy caused the violation of the plaintiff's federal right. Here, even assuming that the actions of Volusia County and Corizon violated Veira's constitutional rights, Denham fails to establish the facts necessary to survive summary judgment. She has not established that either Volusia County or Corizon had policies that caused Veira's death. Because she has failed to make a showing sufficient to establish the existence of elements essential to her case, Volusia County and Corizon are entitled to summary judgment.

## IV. CONCLUSION

We **AFFIRM** the entry of summary judgment in favor of Corizon and Volusia County.

ROSENBAUM, Circuit Judge, concurring:

I concur in the panel's decision that the district court's grant of summary judgment to both Corizon Health and Volusia County must be affirmed on the record in this case. I write separately, however, to note that, as to the County, in the eight prior instances where corrections officers either failed to properly maintain watch over inmates or failed to properly document the inmates' activities, the corrections officers were disciplined by only their immediate supervisors and not by a policymaker for the County. Nor does the record in this case contain any evidence that any County policymaker was ever aware that corrections officers regularly and often with the encouragement of their immediate supervisors, falsified inmate watch records. Had such evidence of a County policymaker's knowledge of this practice existed, the result here would have been different because sufficient evidence exists to create a material issue of fact as to whether the practice of falsifying inmate watch records was so widespread as to constitute a custom or policy of Volusia County.

What happened here should not happen again. Counsel for Volusia County conceded during oral argument that the facts adduced in this case have since been "looked at" by County policymakers and would serve as "pretty firm evidence" of notice in any future litigation. So I would expect that the County will immediately

22

take all necessary remedial actions to correct the systemic failures identified in this

tragic and preventable case.